Joseph YULLING, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.

No. 77 CIV 4869 (LBS).

United States District Court, S. D. New York.

June 5, 1979.

602

Adele M. Elong and Howard Zwickel,
Center on Social Welfare Policy and Law,
New York City, for plaintiff.

Robert B. Fiske, Jr., U. S. Atty., New York City, Janis Farrell, Asst. U. S. Atty., New York City, for defendant.

## OPINION

SAND, District Judge.

In this action, plaintiff challenges a decision of the Secretary of the Department of Health, Education and Welfare ("Secretary" or "HEW") that, for purposes of determining his eligibility for benefits under the federal Supplemental Security Income ("SSI") program, plaintiff's "resources" include amounts he has saved from prior state benefit payments. Plaintiff also challenges the Secretary's determinations that he has not been entitled to receive SSI benefits at any time and terminating those benefits, that plaintiff was overpaid in the full amount of such benefits, and that he must repay overpayments made from January, 1975 through July, 1975. Review is sought pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g).

## I. Plaintiff's Eligibility for SSI Benefits

There appears to be no dispute that but for his resources, plaintiff would be eligible for SSI benefits today, and that he would have been so eligible at the time he began receiving SSI benefits in January, 1974. Plaintiff was released in December, 1971 from Rockland State Hospital, in which he had been confined for 27 years. He presently resides in the Aberdeen Hotel, New York City, a residence for discharged mental patients which provides plaintiff with a structured environment and comprehensive services.

From the time of his release until December 31, 1973, plaintiff received public assistance benefits under New York State's program of Aid to the Aged, Blind and Disabled (AABD); those benefits constituted his sole source of income, with the exception of a few additional dollars which plaintiff earns by helping to serve meals at the Aberdeen. Effective January 1, 1974, the AABD program was replaced by the federal SSI program, which provided uniform national eligibility standards and benefit levels for assistance to the needy aged, blind and disabled. Plaintiff now receives Social Security disability benefits.[1]

The issue before us regarding plaintiff's eligibility is whether he was correctly receiving AABD benefits as of December 31, 1973. If he was, then under the federal SSI regulations he was "converted" into the SSI program as of January 1, 1974.[1A] If plaintiff was not so eligible, he concedes that he also was not eligible for SSI benefits as a new enrollee, (Pl. Br. at 2),[2] and will continue to be ineligible until he reduces his current level of resources to $1,500, the maximum allowed under the SSI program.[2A] As we shall see, however, the issue of plaintiff's eligibility under the prior AABD program has serious consequences with respect to any future entitlement he may have to state supplemental SSI benefits.

## A. Background

Shortly after plaintiff began receiving AABD benefits in December, 1971, he began a pattern of "compulsive" saving: he deposited substantial portions of his benefit checks in a savings account and never made any withdrawals.[3] As a consequence, plain-

---

1. Plaintiff began receiving Social Security disability benefits in January, 1976. Pl. Memo. at 6.

1A. 42 U.S.C. § 1382(g).

2. At an earlier stage in these proceedings, plaintiff vigorously argued that unlimited savings from benefits was permitted under both AABD and SSI. His concession now that this is not the case under SSI is perhaps warranted in light of a recent summary order issued by the Second Circuit Court of Appeals. *Heppner v. Califano*, 598 F.2d 609 (2d Cir., 1979). The

Second Circuit's order, while not binding on this Court, see Rule 0.23 of the Rules of the Second Circuit, held as a matter of law that savings from SSI benefits were resources to be considered in determining an individual's eligibility for the program. *See also Kavich v. Califano*, No. 77–0501–L(A) [Current] CCH Pov.L.Rep. ¶ 28,092 (D.Ky., Feb. 8, 1979).

2A. 42 U.S.C. § 1382(a)(1)(B).

3. Record at 39.

tiff had $3,074 in savings as of December, 1973. There is no dispute that this amount consisted entirely of savings from plaintiff's AABD benefits.[3A] After plaintiff's conversion to the SSI program, he continued this pattern of saving and had accumulated the amount of $4,933 as of November 27, 1974. On that date he was interviewed by the Social Security Administration ("SSA"), which administers the SSI program, as part of the routine redetermination procedure.[4] Plaintiff at that time informed SSA of the existence of his savings account. He was immediately notified that as of November 1974 he was not entitled to SSI benefits and would be terminated from the program as of January 1975. Plaintiff also received on that date the "reconsideration" required for further review of the initial SSA decision.[5] Plaintiff requested and received a hearing with respect to the termination, which hearing was held on January 7, 1975. Shortly thereafter, the hearing examiner determined that an additional hearing [6] was necessary to determine whether the SSI benefits plaintiff had received in 1974 constituted "overpayments" and whether, within the meaning of the SSI regulations, plaintiff was "at fault" in receiving such overpayments. If he was at fault in receiving overpayments, repayment would be required. The second hearing was held over plaintiff's objections that the matter of overpayment was not properly before the hearing examiner. On February 7, 1975, the hearing examiner ruled that plaintiff was ineligible for SSI benefits, that he had been overpaid since January 1, 1974, that he had been "at fault" in receiving such overpayments since November 27, 1974, but that plaintiff should have been suspended, rather than terminated. Plaintiff obtained Appeals Council review of this ruling on June 7, 1977; the Appeals Council upheld the decision below, with the modification that plaintiff was at fault in receiving overpay-

ments only after January 1, 1975, and that repayment would be required only as to the 1975 portion of the overpayments. The Appeals Council made no findings or conclusions as to whether plaintiff should have been terminated or suspended. Plaintiff continued to receive SSI benefits through July, 1975.

### B. Discussion

The basic eligibility requirements for SSI recipients are set forth in § 1611 of the Social Security Act, as amended, 42 U.S.C. § 1382(a). An "eligible individual" may have no more than $1,500 in "resources", other than "resources excluded pursuant to section 1382b . . .". As noted *supra*, plaintiff concedes that he does not meet this test of eligibility, as at all relevant times he has had more than $1,500 in a bank account, which excess is not excludable under the SSI definition of "resources".

Plaintiff was converted to SSI from the New York State AABD program, however, and the SSI program provides that such converted recipients' resources will be deemed not to exceed the $1,500 maximum set in § 1382(a) if such resources do not exceed the maximum allowed by the state plan under which they received AABD benefits in December, 1973. *Id.* § 1382(g); 20 C.F.R. § 416.1260.

Plaintiff contends that he falls within the coverage of this provision, and that the New York AABD plan contained no limit on the amount of savings from the benefit grant itself. Consequently, plaintiff argues, he was entitled to retain the full amount of his savings when he was converted to the SSI program, and his termination was incorrect.

Plaintiff faces two hurdles in advancing this argument. First, the state plan referred to in § 1382(g) must have been an

---

**3A.** It appears that at one time plaintiff subsisted by scavenging from garbage rather than spend money on meals. His social worker is endeavoring to encourage plaintiff to lead a more normal life.

**4.** This interview apparently was the first time plaintiff's eligibility for SSI benefits was considered.

**5.** 20 C.F.R. §§ 416.1408, 1409.

**6.** 20 C.F.R. § 416.1434.

"approved" plan within the meaning of Titles I, X, XIV, or XVI of the Social Security Act as in effect in December, 1973, and of Title 45 C.F.R. Ch. II as in effect in October, 1972. 20 C.F.R. § 416.1260. Secondly, plaintiff must have been receiving state AABD benefits under such an approved plan "correctly". 20 C.F.R. § 416.121(a). Defendant Secretary contends that while the New York plan was an "approved" plan, plaintiff has misconstrued the requirements of New York's AABD program, and has not met the second requirement. We concur.

*The New York AABD Plan*

The requirements for an "approved" state AABD plan were set forth in former § 1602(a) of the Social Security Act, 42 U.S.C. § 1382(a) (1970): One of the requisites was that the plan

(14) provide that the State agency shall, in determining need for aid to the aged, blind, or disabled, take into consideration any other income and resources of an individual claiming such aid. . . .

More precisely, the regulations provided that state plans were required to specify:

the amounts and types of real and personal property, including liquid assets, that may be reserved, i. e., retained to meet the current and future needs while the assistance is received on a continuing basis. In addition to the home, personal effects, automobile and income producing property allowed by the agency, the amount of real and personal property, including liquid assets, that can be reserved for each individual recipient shall not be in excess of *two thousand dollars* [emphasis added].

45 C.F.R. § 233.20(a)(3)(i) (1972).

Plaintiff contends that these federal provisions limiting the amount of resources that an AABD recipient could accumulate were not intended to apply to savings out of benefits; further, plaintiff argues that New York construed the federal resource limit as not applying to benefits out of grants, and permitted unlimited savings from AABD assistance payments.

In support of his first contention, plaintiff cites the federal Handbook of Public Assistance Administration, which set forth the "money payment" principle of the AABD program:

The provision that assistance shall be in the form of money payments is one of several provisions in the act designed to carry out the basic principle that assistance comes to needy persons as a right. The right carries with it the individual's freedom to manage his affairs; to decide what use of his assistance check will best serve his interests; and to make his purchases through normal channels of exchange, enjoying the same rights and discharging the same responsibilities as do friends, neighbors, and other members of the community. The Social Security Administration's interpretation of 'money payments' recognizes that a recipient of assistance does not, because he is in need, lose his capacity to select how, when and whether each of his needs is to be met.

*Id.* Part IV, § 5120. In light of this passage, plaintiff argues, the AABD program clearly was not intended to restrict in any way the disposition by recipients of their benefit payments, and this freedom must necessarily have extended to saving past benefits.

▮ The "money payment" principle as set forth in the above passage, however, is no more than a general statement of policy; it does not address the precise question before us, and cannot be dispositive. A similar statement is found in the federal SSI regulations:

Under the federal program, payments are made under conditions that are as protective of people's dignity as possible. No restrictions, implied or otherwise, are placed on how recipients spend the Federal payments.

20 C.F.R. § 416.110(c). Nevertheless, as plaintiff concedes, savings accumulated from federal SSI benefits do count as "resources" for purposes of eligibility determinations. *See* note 2 *supra* and cases cited herein.

■ We construe 45 C.F.R. § 233.-20(a)(3)(i) as applying to savings derived from any source, including savings from AABD benefits. In order to have had an "approved" AABD plan, therefore, New York must have imposed a ceiling of no more than $2,000 on such savings.

■ Plaintiff next contends that New York construed the AABD resource limit as not applying to savings from benefits. As we have discussed *supra*, if that was the case, New York's AABD plan was not properly an "approved" one within the meaning of the SSI regulations. We find, however, that the New York plan did impose a limit on savings from resources.

The New York AABD regulations contain no express reference to a limit on retained assets.[7] Plaintiff construes this silence as providing for *no* retained assets, *i. e.*, that New York allowed its AABD recipients to reserve no resources. Plaintiff then cites certain correspondence and memoranda authored by officials in HEW, the New York State Department of Social Services, and the New York City Department of Social Services, which establish that New York (and HEW) permitted AABD recipients to save from their grants. Plaintiff then concludes that since New York did not in general permit recipients to have any savings, but did permit savings from AABD benefits, the State therefore did not consider savings from benefits to be "resources".

Plaintiff's argument falls, however, with his interpretation of New York's AABD regulations. Rather than imputing a "zero" level of permitted "resources" to New York, we find from the record that New York State officials (and those of New York City and HEW as well) understood that there existed an applicable "liquid assets provi-

sion". Thus, we find either that New York adopted the federal ceiling on allowable reserved resources, or that in the absence of any State ceiling the maximum ceiling allowed by the federal regulation, $2,000, applied. In either case, we reach the same result: plaintiff was allowed, under New York's AABD program, to accumulate $2,000 in savings, and savings from benefits were included in that total.[8]

In light of these conclusions, we find that New York's AABD plan was an "approved" one. We next turn to the question of whether plaintiff was "correctly" receiving AABD benefits under New York's program.

*Plaintiff's AABD Status*

■ From the foregoing discussion of the New York AABD program, and of the federal ceiling on savings, it is apparent that as of December, 1973, plaintiff had $2,000 in resources and was not correctly receiving benefits under the New York AABD program. On the basis of that fact, we conclude that he has never been eligible for SSI benefits, and was not properly converted to the SSI program in January, 1974.

Defendant also argues that plaintiff failed to meet another New York constraint on permitted savings: New York permitted savings from AABD benefits only for identified "special needs", and plaintiff's savings did not meet that requirement.

In the administrative proceedings below, plaintiff did argue that his savings were directed toward a particular need, *i. e.*, that plaintiff's need to save money was equivalent to another recipient's need to purchase a washing machine. The Appeals Council found it unnecessary to reach the merits of this contention, however, in light of its finding that plaintiff had in any event exceeded

7. There was a single express exception for savings reserved for the purpose of a burial fund. 18 N.Y.C.R.R. § 352.24.

8. We are mindful of the concern which many welfare recipients or would-be recipients and those acting on their behalf have with respect to the question of savings. An inability to save any portion of the benefits may often operate to deprive the welfare recipient of a feeling of dignity and security and the ability to satisfy

some particular need. SSI has recognized this by permitting a recipient to accumulate savings up to $1,500. 42 U.S.C. § 1382(a) and 20 C.F.R. 1205(a). The federal government likewise recognized this need by permitting state AABD plans to allow savings up to $2,000. 45 C.F.R. 233.20(a)(3) (1972). Whether the respective $1,500 and $2,000 levels are proper is a serious policy question but one which is not properly before this Court.

the federal limit on savings. In light of our conclusion to the same effect, we also need not determine whether plaintiff's savings were accumulated for a particular "need".

## II. Recovery of Overpayments

Having concluded that plaintiff was not correctly receiving AABD benefits under the New York program, was not properly converted to the SSI program, and has not at any time been eligible for SSI benefits, we turn to the question of recovery of overpayments. The Appeals Council determined that all of the SSI benefits which plaintiff received constituted overpayments, and we have no reason to disagree with that ruling. The Council further found that plaintiff was "at fault" in receiving the overpayments for the period of January through July, 1975, in that plaintiff knew or should have known as of January, 1975, that he was not entitled to SSI benefits. The consequence of this finding is that, pursuant to SSI regulations, the Secretary may not waive the recovery of such overpayments. 20 C.F.R. § 416.550.

There are two questions before us: first, the procedural question of whether the issue of 1975 overpayment was properly before the Appeals Council; and second, whether plaintiff was "at fault" in receiving the 1975 benefits.

*Appeals Council Review Procedure*

As noted *supra*, the Hearing Examiner held a second hearing on the issue of overpayments on January 31, 1975. Plaintiff makes no objection to that proceeding.[9] Rather, plaintiff argues that since the Hearing Examiner had made no findings or rulings with respect to the 1975 payments, but addressed only the 1974 payments, the issue of the 1975 payments was not properly before the Appeals Council.

Defendant contends that the Hearing Examiner determined, as of February 7, 1975, that plaintiff had been overpaid as to all benefits paid since January 1, 1974, and that while his findings as to fault were of

---

9. To be precise, plaintiff states that he does not necessarily concede the validity of this regulation although he is not complaining in this

necessity, considering the date of the hearing and decision, limited to the time period before him, they were equally applicable to the 1975 payments plaintiff was subsequently to receive. Furthermore, defendant claims that plaintiff's counsel addressed the issue of 1975 overpayments and plaintiff's fault in his memorandum filed with the Appeals Council and in oral argument, and consequently "should not now be permitted to claim . . . that he could not have anticipated such overpayment being considered by the Appeals Council". (Def. Supp. Mem. at 13).

The Hearing Examiner considered the issue of overpayment to the fullest extent possible at that time. Among his Findings of Fact, the Examiner found that

.    .    .    .    .

2. During the year 1974 and up to January 1975, the claimant maintained a balance of over $1,500.00 in his savings account.    .    .    .

.    .    .    .    .

6. The claimant has received payments from the supplemental security income benefits in the amount of $4,054.80 from January 1, 1974 to January 1975 inclusive.    .    .    .

The Conclusions of Law included the following:

1. The claimant was not entitled to supplemental security payments since January 1, 1974.    .    .    .

.    .    .    .    .

3. The money received by the claimant as supplemental security payments since January 1974 are overpayments.

.    .    .

.    .    .    .    .

Upon its review of the Hearing Examiner's decision, the Appeals Council found that

.    .    .    .    .

---

proceeding of the action taken by the hearing officer pursuant thereto.

2. Payments made to the claimant from January 1974 through July 1975 constitute an overpayment.

. . . . .

4. The claimant was not without fault in causing the portion of the overpayment received in 1975.

The Appeals Council concluded:

The decision of the administrative law judge is modified. It is the decision of the Appeals Council that the claimant is not eligible for supplemental security income payments; that he was overpaid from January 1974 through July 1975; that adjustment or recovery of the 1974 overpayment may be waived; and that adjustment or recovery of the 1975 overpayment may not be waived.

▮ Plaintiff is correct in his contention that the precise amount of the 1975 overpayment was not before the Hearing Examiner. In all other respects, however, we find that there was no change in either the underlying facts or the applicable principles of law. With respect to the question of whether plaintiff was "at fault" in receiving the 1975 overpayments, for example, there was no change in the facts as to plaintiff's mental condition, his retention of counsel in December, 1974, or the amount of his monthly benefits. We therefore find no basis for concluding that the Appeals Council considered issues that were not before the hearing examiner. On the record before us, we find that the Council did no more than multiply the amount of plaintiff's monthly SSI benefit payment by the number of additional months in 1975 in which he received those payments.

*Plaintiff's "Fault" in Receiving Overpayments*

▮ Where overpayments of SSI benefits have been made to an individual who is not currently eligible for such benefits, recovery is to be made by means of refund. 20 C.F.R. § 416.560. The Secretary, however, may waive such recovery when:

(a) the overpaid individual was without fault in connection with an overpayment, and

(b) adjustment or recovery of such overpayment would either

(1) defeat the purpose of title XVI, or

(2) be against equity or good conscience, or

(3) impede efficient or effective administration of title XVI due to the small amount involved.

The regulations further provide that a recipient is *not* without fault if he "did not return a payment which he knew or could have been expected to know was incorrect". 20 C.F.R. § 416.552(c). This question is expressly directed to the individual recipient. In determining whether an individual is at fault, the Secretary must consider:

all the pertinent circumstances surrounding the overpayment in the particular case. The Social Security Administration considers the individual's understanding of the reporting requirements, the agreement to report events affecting payments, knowledge of the occurrence of events that should have been reported, efforts to comply with the reporting requirements, understanding of the obligation to return checks which were not due, and ability to comply with the reporting requirements (e. g., age, comprehension, memory, physical and mental condition).

. . .

20 C.F.R. § 416.552.

The Appeals Council found that:

[s]ince the claimant was notified on November 27, 1974, that he was no longer eligible, and since on December 11, 1974, he authorized an attorney to represent him in his claim to have benefits continued, the Appeals Council is of the opinion that the claimant knew or could have been expected to know that the checks he received beginning January 1, 1975, were not due and should have been returned.

Record at 11. The Appeals Council made no further findings with respect to plaintiff's particular circumstances or the basis on which it determined that he "knew or could have been expected to know" that the

checks he received beginning January 1, 1975 should have been returned.[10]

It is the Secretary's position that the passage quoted from the decision of the Appeals Council signifies that the Council "tacitly concurred in plaintiff's argument that he himself was unable to comprehend the administrative situation, but . . . found that after December 11, 1974 (*i. e.,* beginning with the January 1, 1975 SSI benefit) his representative's comprehension of plaintiff's lack of entitlement would be imputed to plaintiff." Def. Supp. Br. at 13.

Assuming *arguendo* that this interpretation is correct (and of course that plaintiff's counsel correctly understood plaintiff's liability for repayment), we must consider whether such an imputation was proper. The Appeals Council cited no authority for imputing counsel's understanding to the plaintiff, nor has the Secretary in its memoranda submitted to the Court.

The SSI regulations do define the authority of a claimant's representative; in pertinent part, they provide that notice of administrative action sent to a claimant's representative "shall have the same force and effect as if it had been sent to the party represented". 20 C.F.R. § 416.1505. In this case, however, the notice of administrative action was sent to Mr. Yulling, who at the time was not represented by counsel. Moreover, the particular regulation at issue expressly provides that whether or not a claimant "knew or could have been expected to know" that a payment was not due him is to be determined with reference to the individual himself. The regulations provide no further guidance as to the propriety of imputing counsel's presumed understanding of "the administrative situation" to plaintiff.

Plaintiff, however, has directed our attention to the case of *Davis v. Califano,* No.

75–3469 [1978–79 Transfer Binder] CCH Unempl.Ins.Rep. ¶ 15,530, (E.D.Pa.1977); which involved somewhat similar circumstances. Plaintiff in *Davis* had received overpayments of survivors' benefits under the Social Security Act.[11] Her attorney requested by letter that her benefits be continued pending final determination of the claim. The court found that the sole basis of the Secretary's determination that plaintiff was "at fault" in receiving the overpayments was the fact that her attorney had made the request in question. Despite the fact that plaintiff was represented by counsel, the court considered the plaintiff's understanding to be the only material factor in determining her "fault":

> It is difficult to comprehend how an attorney's letter, which requests that his client's Social Security benefits not be suspended until a final determination, can be held to be conclusive and binding on the state of mind of a sixty-seven (67) year old, not well educated, physically debilitated woman who believed herself legally married to the decedent for twenty-three (23) years and entitled to widow's benefits. There is no proof that the plaintiff specifically directed her attorneys to send the letter or that she had knowledge of it. . . .

*Id.* at 1999–34.

Similarly, we find no basis for imputing to plaintiff his counsel's presumed understanding that plaintiff might be required to pay back any payments plaintiff was ultimately found not entitled to receive. It must be borne in mind that we are not dealing here generally with the question whether the circumstances warrant imputation of a counsel's knowledge to the client on common law agency principles. Rather, we deal with a specific HEW regulation in this limited context.

---

10. The Notice of Planned Action which plaintiff received in November, 1974 advised him that

> If you ask for reconsideration, we will not make any change in your payments until a written reconsideration decision is made. . . . However, depending on the outcome of the reconsideration, you may have to

> pay back any money you were not entitled to receive. . . .

The Notice of Reconsideration, issued the same date, contained no such advice.

11. The provisions for overpayments and waivers of recovery are in all pertinent respects the same.

We reverse the decision of the Appeals Council that plaintiff was at fault in receiving the overpayments made in 1975. The Appeals Council made no findings or conclusions with respect to the other requirements for waiver of recovery of overpayments, 20 C.F.R. § 416.550, as to either the 1974 or the 1975 overpayments. As the Appeals Council determined, despite the absence of such findings or conclusions, that plaintiff was nevertheless entitled to waiver of recovery as to the 1974 overpayments, we assume that plaintiff meets the other requirements of § 416.550 as to both the 1974 and the 1975 overpayments, and we reverse the Secretary's decision with respect to the 1975 overpayments.[12]

### III. Plaintiff's Entitlement to State Supplemental Benefits

■ Having determined that plaintiff was never eligible for SSI benefits, but that recovery of the overpayments made to him may be waived, we next turn to the question of plaintiff's future eligibility. It is not disputed that, at such time that plaintiff reduces his level of resources to $1,500, he will be eligible for SSI benefits. There remains, however, the troublesome question of plaintiff's eligibility for state supplemental benefits.

Under the SSI program, states may if they choose provide recipients of federal SSI benefits with supplemental benefits. 20 C.F.R. § 416.2001 et seq. The amounts of such "optional" benefits are within the discretion of the states. Where a recipient has been "converted" from a state's AABD program, however, the state is required by SSI to provide "mandatory" supplemental benefits, and the amounts of such benefits must, when added to the federal basic SSI grant, be sufficient to ensure that that individual receives a total amount equal to his previous AABD benefits. Id. § 416.2050.

In light of our determination that plaintiff was not correctly receiving AABD benefits in December, 1973, it is apparent that plaintiff will not be eligible for mandatory state supplemental benefits. Plaintiff contends—and the Secretary does not disagree—that if plaintiff receives only the lower optional supplemental benefits, he will be unable to remain at the Aberdeen and probably will have to be re-institutionalized.

It is also apparent that the predicament in which plaintiff now finds himself could have been avoided, at least in substantial part, had the state officials responsible for the AABD program been aware of plaintiff's compulsive savings practices. If plaintiff was unable to desist from accumulating excess resources, the state might have determined to appoint a "protective payee" for him. 45 C.F.R. § 234.70 (1972).

Similarly, the federal SSI Administration might also have determined at an earlier point that plaintiff was ineligible for SSI benefits and might have appointed a representative payee if appropriate. 20 C.F.R. § 416.601.

We therefore remand to the Secretary for a determination of whether a representative payee should be appointed for plaintiff at such time as plaintiff becomes eligible for SSI benefits, and to endeavor to formulate a program in consultation with plaintiff's social worker which may avoid reinstitutionalizing plaintiff. The Secretary, together with the appropriate state officials and plaintiff's social worker, should also consider whether under the unique circumstances of this case some arrangement may be made whereby plaintiff will not be deprived of the higher mandatory supplemental benefits and can remain in his present residence.

12. To a large extent, this is a paradoxical situation. The plaintiff will become eligible when he has "spent down" so that his savings fall below the $1,500 level. The inability of HEW to recoup excess payments made in 1975 may simply delay the time when payments to plaintiff will commence.

The Court inquired at oral argument of plaintiff's counsel whether this issue was therefore of any real significance. We were advised that plaintiff attached great importance to the existence of his bank account, even if the ultimate economic effect on him of any HEW recoupment would be offset by an earlier resumption of benefit payments.

For example, since the funds are in a bank account, the existence of which appears to serve a purpose in meeting the psychological needs of this fragile compulsive saver and there is no imminent danger of the funds being frittered away or otherwise dissipated, an arrangement may be possible which would in effect retroactively divest plaintiff of those funds without unnecessarily upsetting plaintiff and yet render him eligible for the higher benefit schedule.

Obviously, there are limits to what a gigantic bureaucracy can do to meet the idiosyncratic needs of a benefit recipient. Nevertheless, we are confident that on remand plaintiff's plight will be dealt with not mechanically but compassionately.

This matter is remanded to the Social Security Administration for reconsideration and rehearing consistent with this opinion.

SO ORDERED.