Edward Joseph SINGER, Plaintiff,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

No. 80 Civ. 3576 (CES).

United States District Court,
S.D. New York.

June 15, 1983.

Edward Joseph Singer, pro se.

John S. Martin, U.S. Atty., Southern Dist. of N.Y. by Janis P. Farrell, Asst. U.S. Atty., New York City, for defendant.

STEWART, District Judge:

The plaintiff, Edward Singer ("Singer"), brought this action pursuant to sections 1631(c)(3) and 205(g) of the Social Security Act, as amended, 42 U.S.C. § 1383(c)(3) (1976) and 42 U.S.C. § 405(g) (1976 and Supp. IV 1980), for review of a May 1980 final determination of the Secretary of Health and Human Services ("the Secretary"). The Secretary declared Singer ineligible for Supplemental Security Income ("SSI") benefits on the grounds that Singer had resources in excess of the amount allowable, and that inter vivos trust instruments, both executed and proposed, would not divest plaintiff of his resources for SSI eligibility purposes. On April 16, 1981, this court granted the Secretary's motion to remand for the purpose of reconstructing the administrative record or to make additional factual findings. Upon remand, the Secre-

tary made additional findings that resulted in a final determination that the plaintiff had been overpaid SSI benefits and that recovery of the overpayment could not be waived. The plaintiff renews his action to set aside the Secretary's finding of ineligibility and also contests the Secretary's most recent determination as to overpayment. The Secretary has submitted a motion for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c) and 42 U.S.C. § 405(g).

I. BACKGROUND

Singer was converted from the New York State Welfare Plan to SSI on January 1, 1974. He had been saving money from his welfare payments, a practice permissible under the New York Plan and had accumulated approximately $2200.00 at the time of conversion. In September 1975, Singer reported to the Social Security Administration ("the SSA") that he had continued to save from his SSI checks and had accumulated a total of $4100.00. SSA determined that he was still eligible for SSI benefits.

In September 1976, Singer's savings totaled approximately $5500.00. At this point Singer was found ineligible for SSI due to excess countable resources. Mr. Singer appealed the determination and at a hearing in December 1976, an Administrative Law Judge ("ALJ") deferred cessation of benefits pending a policy clarification as to how the resources of former welfare recipients were to be treated for SSI eligibility purposes. Singer was subsequently found eligible for SSI in April 1977, by which time he had accumulated approximately $7,000.

In November 1978, Singer was again declared ineligible for SSI benefits due to excess resources which now totaled $11,000.00. Singer appealed this latest declaration of ineligibility at a hearing before an ALJ in February 1979. This time the ALJ upheld the finding of ineligibility, and the SSA Appeals Council affirmed the ALJ's decision in April 1979.[1]

1. The Secretary makes no argument that Singer has an undisclosed source of income. To the contrary, Singer's ability to squeeze savings from his relatively meager benefit checks apparently derives solely from abstinence and asceticism. It appears that Singer on occasion

The ALJ again "deferred" a decision as to one question, however. At the eligibility hearing Singer had offered for the first time an unexecuted inter vivos trust instrument which he proposed as a means of divesting himself of his excess resources and sought the ALJ's approval of the instrument. Because the SSA had not ruled upon the effect of this trust previously, the ALJ declined to pass on its validity for SSI eligibility purposes pending a ruling by the SSA. Tr. 397–98. In August 1979, the General Counsel's office determined that the trust corpus would be a countable resource, Tr. 505, and a Notice of Decision was sent to Singer. Tr. 489. Singer pursued his administrative remedies and a hearing was held in February 1980 on the validity of the trust. By this time, Singer had actually executed one trust, see Tr. 126, and proposed several other versions for the ALJ's consideration. The ALJ reviewed the case de novo, again found Singer ineligible for SSI as of November 1978, due to excess countable resources, and declared all versions of the trust inadequate to divest Singer of his resources. The trusts provided for return of the corpus to Singer in the event he became ineligible for SSI in the future. Tr. 423. Because the corpus could become available to the plaintiff, the ALJ held it to be a countable resource within the meaning of SSI regulation 20 C.F.R. § 416.-1201. Tr. 424. Singer appealed the ALJ's decision to the Appeals Council which affirmed. The Council's final determination of May 2, 1980, is the subject of this action.

In April 1981, we granted the Secretary's motion to remand to reconstruct the record or make additional findings. In June 1981, the Appeals Council in turn remanded the case to an ALJ who found that Singer had been ineligible for SSI since August 1975, due to excess resources. The ALJ also concluded that the SSA should waive recovery because no fault of Singer caused the overpayment which occurred between August 1975 and November 1978 (at which point SSI benefits were discontinued), and because it would be against equity and good conscience to recover the overpayment. Tr. 175–80. In April 1982, the Appeals Council modified the ALJ's decision to the extent that it found that Singer was not without fault in accepting the overpayment, and that recovery of the overpayment could not be waived. The Appeals Council found that the period of overpayment from which payments would have to be recovered was October 1976 to December 1978. Tr. 160–63.

## II.  DISCUSSION

In reviewing a final determination of the Secretary, a federal court may review the Secretary's application of the law to the facts. See 42 U.S.C. § 405(g). The Secretary's findings of fact will be conclusive if they are supported by substantial evidence. Id. Substantial evidence means relevant evidence, "more than a mere scintilla. . . . [that] a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1975) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). The issues before us here are whether (1) the plaintiff's SSI benefits were properly terminated in November 1978, due to excess countable resources, (2) an overpayment to the plaintiff was made between the months of October 1976, and December 1978, and (3) recovery of the overpayment is proper.

### PLAINTIFF'S ELIGIBILITY FOR SSI BENEFITS

In order to be eligible for SSI an individual must be aged, blind or disabled and have income and "countable resources" below specified statutory amounts. 42 U.S.C. 1382(a). Countable resources, which are

---

has gone without food for several days at a time and at other times has foraged for discarded food in refuse containers. See Plaintiff's Reply Mem. at 26–27. Mr. Singer's papers

display an obvious pride in his ability to save money despite his past dependence on public funds and it is clear that saving provides purpose and meaning in his life.

limited to a value of $1500.00,[2] include cash, or other liquid assets that an individual could convert to cash to be used for his support. 20 C.F.R. § 416.1201(a). If the individual has the "right, authority or power to liquidate the property," it is a countable resource. *Id.* Liquid resources include assets in cash or "financial instruments which are convertible to cash. . . . or checking accounts, stocks, bonds, mutual fund shares . . . and *similar properties.*" 20 C.F.R. § 416.1201(b) (emphasis added).

It is undisputed that since September 1976, Singer has had resources in excess of $1500.00. Singer argues, however, that since his assets generally have been held in short term certificates of deposit, which may not be liquidated before the maturity date without the imposition of a penalty, they are non-liquid assets and therefore excludable as countable resources. We reject this argument since a similar rationale is just as applicable in many cases to stocks, bonds, or mutual fund shares and these instruments are specifically enumerated as countable resources in the regulations. *See* 20 C.F.R. § 416.1201(b). More importantly, the owner of certificates of deposit has the "right, authority or power to liquidate the property." In short, we agree with the Secretary, that certificates of deposit are similar to the properties enumerated, and are countable resources within the meaning of the regulation.

In order to come within the resource limitations of the SSI program, Singer next proposes placing his accumulated savings in an inter vivos trust that would be revocable only if he became ineligible for SSI. It appears that Singer actually executed one version of the trust in January 1980, *see* Tr. 126, although the Secretary's unfavorable rulings on the acceptability of all versions of the trust for SSI eligibility purposes have apparently discouraged him from placing his savings in any trust. The Secretary claims that the plaintiff's failure to fund any version of the trust makes the issue of the trust's validity "moot". We do perceive ripeness problems in reaching the merits, but putting such concerns aside, we agree with the findings below that the trusts would not sufficiently divest Singer of his assets to make him eligible for SSI. The mechanism chosen by Singer, if allowable, would permit any otherwise qualified person with impermissibly large assets to receive benefits for as long as he or she liked and, since it would take nothing more than intentionally running afoul of SSI eligibility requirements for the trust corpus to revert, maintain access to those assets.

Plaintiff also claims that his right to receive SSI benefits includes a legal right to use his benefits as he sees fit. In particular, he claims that he should not be penalized for saving if he deems saving a proper use of his benefits. We agree that Singer has a right to use his benefits as he wishes. *See* 20 C.F.R. § 416.110(c). That right, however, is separate and distinct from the right to receive SSI benefits. The statutorily created right to receive SSI benefits is predicated upon requirements that both the applicant's income and resources fall below specified amounts. 42 U.S.C. 1382(a).

The plaintiff contends that the $1500.00 limit on countable resources is arbitrary. However the establishment of limits always involves line drawing. Whether the line has been properly drawn is "a serious policy question but one which is not properly before this Court." *Yulling v. Califano,* 474 F.Supp. 601, 606 n. 8 (S.D.N.Y. 1979). As long as the limit imposed bears a rational relation to the purpose of the SSI program, the limit is unassailable. The purpose of the program is "to assure a minimum level of income for people who are [aged,] blind or disabled and *who do not have sufficient income* and *resources* to

---

**2.** A New York State welfare recipient converted to SSI is deemed to meet the resource test if his resources do not exceed the maximum resource amount permitted by the state welfare plan. 42 U.S.C. § 1382(g). New York permits welfare recipients to accumulate up to $2000.00 of retained welfare payments in certain situations. SSI Claims Manual § 12677(b). Because the plaintiff had in excess of $2000.00 at the time of conversion to SSI, the exception to the $1500.00 limit, promulgated in 42 U.S.C. § 1382(g) is of no consequence.

maintain a standard of living at the established Federal minimum income level." 20 C.F.R. § 416.110 (emphasis added). Since the purpose is not to provide a means of assuring future financial security but only to provide income when it is actually needed, we hold that the resource limit bears a rational relation to the purpose of the program.

In sum, we conclude that there is substantial evidence to support the Secretary's finding that Singer was ineligible to receive SSI as of November 1978, and that the law was properly applied to the facts.

## OVERPAYMENT

The Secretary also made a determination that plaintiff's eligibility for SSI actually ended in September 1976, and that recovery of the overpayment made from that date until November 1978 could not be waived.

To validly make his determination that an overpayment was made during this period, and, a fortiori, to recover the overpayment, the Secretary concedes that it is necessary to reopen and reverse the December 1976 decision by the ALJ to defer cessation of benefits and the subsequent determination by the SSA in April 1977 that Singer was still eligible for benefits. The controlling regulation, 20 C.F.R. § 416.1488(b), provides in relevant part:

### Conditions for reopening

A determination, revised determination, decision, or revised decision may be reopened—

.     .     .     .     .

(b) Within two years of the date of the notice of the initial determination if we find good cause, as defined in § 416.1489, to reopen the case. . . .

Although we entertain some doubt as to how this rather obtusely worded regulation should be interpreted, we conclude that neither of the two most likely interpretations allows the Secretary to collect an overpayment from Singer.

The confusion as to the correct interpretation centers around what is meant by "*the* initial determination" from which the two year reopening period should be measured. To perceive the problem, let alone discover its solution, it is important to understand some definitions. An "initial determination" is a type of "determination". See 20 C.F.R. §§ 416.1400(a)(1), 416.1402. The only other type of determination is a "reconsidered determination" which is simply an initial determination that the SSI applicant or beneficiary has asked the SSA to reconsider. See 20 C.F.R. §§ 416.-1400(a)(1) and (2), 416.1401. Determinations, initial or reconsidered, are rulings, generally with regard to eligibility, made by the SSA which are subject to administrative and judicial review. See 20 C.F.R. §§ 416.1400, 416.1402. A ruling by an ALJ or the Appeals Council when a determination is subjected to administrative review is called a "decision". 20 C.F.R. §§ 416.1400, 416.1401.

Returning to the requirements for reopening decisions and determinations under 20 C.F.R. § 416.1488(b), the Secretary apparently assumes that "the initial determination" from which the two years should be measured is the most recent non-final determination, or in other words, the determination which gave rise to the present federal court action. The Secretary argues:

On November 14, 1978, an initial determination was made that plaintiff was not entitled to SSI benefits and that his benefits would cease in December 1978. Since plaintiff has appealed this cessation determination which is the subject of the present action, his administrative appeal has not yet become final. Thus, November 14, 1978, is the controlling date from which the time to reopen must be measured. Def.Mem. at 13.

Counting back two years from the date of this "controlling" initial determination, the Secretary concludes that the December 1976 decision and April 1977 determination on eligibility may be reopened.

We are not at all convinced that the Secretary's interpretational approach to § 416.1488(b) is correct, since we see noth-

ing in that section or the accompanying regulations which explains why "the initial determination" referred to in § 416.1488(b) should be construed to mean the most recent non-final determination. However, following the Secretary's approach of tracing the present proceedings back to the "initial determination" which gave rise to them, we do not agree that November 14, 1978 is the seminal date. The record shows that the November 1978 determination of ineligibility was appealed to an ALJ, who upheld the determination, and then to the Appeals Council, which also affirmed. Since Singer did not institute an action in federal court within sixty days of the Appeals Council's decision and was not granted an extension of time in which to do so,[3] the November 1978 initial determination of ineligibility became binding and final with the Appeals Council's decision. *See* 20 C.F.R. §§ 416.1405, 416.1455, 416.1481, 416.-1482. Indeed, the Secretary's own description of the prior proceedings in his memorandum of law seems to draw precisely the same conclusion. *See* Defendant's Mem. at 2 ("[t]he decision of the [ALJ] became the final decision of the Secretary when it was approved by the Appeals Council on April 20, 1979," and became binding when no timely federal court action was sought).

■ The initial determination that *is* the subject of the present action was made in August of 1979 after the General Counsel's Office ruled that Singer's trust would not change his eligibility status.[4] In response to this determination, Singer exhausted his administrative remedies and then brought this action in 1980. Again, the Secretary's own account of the prior proceedings is in accord. *See* Defendant's Mem. at 3 ("[a]n initial determination was made on August 22, 1979, [regarding the] plaintiff's proposed trust agreements"). Counting two years back from August 1979, it is clear the April 1977 and December 1976 rulings may not be reached under the Secretary's approach.

As noted, we are not convinced that the Secretary's approach to interpreting § 416.-1488(b) is the correct one. We think a better approach begins by reading § 416.-1488(b) in light of the preceding section, 20 C.F.R. § 416.1487. That section provides:

(a) *General.* Generally, if you are dissatisfied with a determination or decision made in the administrative review process, but do not request further review within the stated time period, you lose your right to further review. However, a determination or a decision made in your case may be reopened and revised. After we reopen your case, we may revise the earlier determination or decision.

(b) *Procedure for reopening and revision.* You may ask that a determination or a decision to which you were a party be revised. The conditions under which we will reopen a previous determination or decision are explained in § 416.1488.

■ Although this section discusses the claimant's or beneficiary's right to reopen a case—not the SSA's right, or as was the case here, the Appeals Council's right—it nevertheless provides a clue as to the mean-

---

**3.** Singer sought and was denied an extension of time to file a court action. *See* Tr. 534–38.

**4.** Since the ALJ who ruled on the November 14, 1978, determination of ineligibility in February 1979, "deferred" a decision on the trusts pending a determination by the SSA, and since Singer brought this case to appeal the SSA's subsequent determination on the trust issue, an argument can be made that this proceeding does date back to November 1978. We reject this argument for two related reasons. First, as noted, the November 1978 determination became final and unappealable before any federal court action was ever brought. *See* n. 3, *supra.* Second, since the Appeals Council rejected Singer's request for an extension of time to seek federal court review of the November 1978 determination and thereby itself cut off review of this determination, it would be letting the Secretary have it both ways to now entertain the Secretary's argument that the instant federal court proceeding dates back to November 1978. The ALJ in the first round of proceedings, i.e., those which followed the November 1978 determination, deferred a decision on the trusts because there had never been an initial determination on them. It was the SSA's initial determination on the trusts in August of 1979 which revived Singer's right to seek administrative and judicial review. Thus, this action dates back to the date of that initial determination on the trusts.

ing of § 416.1488. Section 416.1487 suggests that what § 416.1488 means to do is provide an extension of time in which prior determinations and decisions may be reviewed, beyond the time by which they otherwise would become final and binding. In other words, two years is counted *forward* from a past initial determination, not, as the Secretary assumes, *back* from the most recent initial determination. Since an initial determination is a type of "determination", and since it may be followed by a "revised determination, decision, or revised decision," *see* 20 CFR § 416.1488, or some combination thereof, we read § 416.1488(b) to count the two years as beginning with the date of the initial determination that is to be reopened, or with the date of the initial determination that gave rise to any subsequent "revised, determination, decision or revised decision" if it is one of those that is to be reopened. Under this approach, if more than two years has elapsed from the initial determination to be reopened or from the initial determination that gave rise to any subsequent determination or decision desired to be reopened, reopening is no longer possible. Following this approach, the date by which the December 1976 decision by the ALJ had to have been reopened was September 1978, since this is two years from the date of the initial determination which preceded and gave rise to the ALJ's decision. The date by which the April 1977 determination of Singer's eligibility could have been reopened was, at the latest, April 1979.[5] The Appeals Council's decision to reopen and revise the rulings in question was not made until April 1982. Thus it was, under this approach, some three to three and a half years too late.

In sum, we find no way of calculating the two year limitation period which would allow the Secretary to collect an overpayment from Mr. Singer. Accordingly, we need not consider whether there is good cause to reopen prior determinations of eligibility.

### CONCLUSION

For the reasons stated, we grant the Secretary's motion for judgment on the pleadings on the question of plaintiff's eligibility for SSI benefits. We deny the motion insofar as it relates to overpayment, and reverse the Secretary's finding that an overpayment must be repaid. The action is dismissed.

SO ORDERED.

---

**5.** An argument can be made, comparable to that taken by the Secretary and rejected in n. 4, *infra,* that the two years should be viewed as commencing in September 1976 even with regard to the April 1977 initial determination. This approach envisions the determination of ineligibility in September 1976 as not only hav-

ing given rise to the deferral of benefits cessation by the ALJ in December 1976, but also to the determination of eligibility in April 1977. Under this approach the two years would have run in September 1978 with regard to both rulings.