**Charles R. DERRER, Plaintiff,**

v.

**Louis W. SULLIVAN, Secretary of the Department of Health and Human Services, Defendant.**

Civ. A. No. 90–K–2016.

United States District Court, D. Colo.

July 16, 1991.

Linda J. Olson, Legal Aid Soc. of Metropolitan Denver, Denver, Colo., for plaintiff.

Chalk S. Mitchell, Asst. U.S. Atty., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

In this appeal, Charles R. Derrer challenges the Secretary's termination of his Supplemental Security Income (SSI) benefits based on a finding that Derrer's resources exceeded the statutory limit. Derrer contends that (1) the Secretary's finding was not supported by substantial evidence, (2) the Secretary erred in not considering the applicability of regulations governing income producing property essential to self-support, and (3) the foregoing regulations are arbitrary and capricious and therefore invalid. The Secretary disputes each of these arguments. I reverse the Secretary's decision and award Derrer the SSI benefits he was denied.

### I. FACTS

On or about September 7, 1989, Charles Derrer was informed by the Secretary that his SSI benefits would be terminated in October, 1989 because he had excess resources commencing in July, 1987. The Secretary's finding of excess resources was based on Mr. Derrer's ownership of a one-third undivided interest in the surface and mineral rights of 160 acres of undeveloped land in Pittsburg County, Oklahoma. In 1985, Derrer executed a lease of exploration rights to his interest in the property to Frank J. Gagliardi, Jr., for $12,108. Gagliardi then assigned the lease to Texaco Producing, Inc. in November, 1985. Texaco extended the lease in 1988 for an additional three-year period, paying $16,000 for the extension.

The Secretary determined that the value of Derrer's interest in this property was between $13,300 and $16,000. To make this determination, an employee of the Social Security Administration (SSA) contacted Gagliardi by telephone regarding the lease of the exploration rights. Gagliardi

informed the employee that he estimated the value of the property to be between 2.5 and 3 times the one-year lease value for the total acreage. Applying this formula, the Secretary determined that the one-year lease value for the property was one-third of $16,000, or $5,333. This figure, multiplied by 2.5 and 3, yields a property value of between $13,300 and $16,000. Thus, because Derrer held an interest in property worth at least $13,330, the Secretary determined that he was ineligible for benefits.

Derrer requested and was granted a hearing before an administrative law judge (ALJ) on this ruling. During the hearing, Derrer presented evidence that the 1989 assessed value of the property for tax purposes was $1,280. *See* R. at 22, 65. Derrer further testified that, on the recommendation of the County Assessor's Office, he contacted Mr. Junior Kelly, a local real estate broker, regarding the value of the property. Mr. Kelly estimated the property's value to be between $15 and $50 an acre. *Id.* at 22. In a letter to Derrer dated October 26, 1989, Kelly further stated, "It is my opinion that the surface acres described above would have a value of $37.50 per acre. If it were possible to make an on-site inspection, the value might be some [sic] higher, although from looking at the aerial photos, it appears there is 1 mile of rough terrain and no access." *Id.* at 92.

In his decision, the ALJ rejected these estimates in favor of the formula provided by Gagliardi. The ALJ reasoned:

> The claimant has introduced an assessment of the property made by the Pittsburg County assessor and a valuation of the property prepared by a local real estate broker as evidence of the value of the property. (Exhibits 10 and 17) However, neither of these exhibits provide a full picture of the property's value. The county assessor's statement that the land is "assessed at $1,280" is of no assistance without additional evidence as to the basis for this assessment. Most tax assessments are based upon some percentage of market value and without knowing this percentage, the assessment figure is meaningless. (Exhibit 10) Likewise, the valuation prepared by Junior Kelley [sic], MSA, does not give a complete picture of the property's value. Mr. Kelley states, "It is my opinion that the surface acres described above (the property at issue) would have a value of $30.50 [sic] per acre." (Exhibit 17) Mr. Kelley's specific reference to "surface acres" indicates that he is not considering the value of oil and gas exploration and production rights in valuing the land. (Exhibit 17)

> The only evidence in the record which is directed to the valuation of the oil and gas exploration rights is a report of contact with Fred Gagliardi, Jr., the broker who leased the lands oil and gas exploration rights from the claimant in 1985. Mr. Gagliardi stated to the Social Security Administration that land and mineral rights are valued at approximately 2.5 to 3 times the total amount paid for the total acreage for one year. (Exhibit 11) In 1988, the claimant received $16,000 from Texaco Producing, Inc. for a three year lease of oil and gas exploration rights on his share of the land. (Exhibit 8) Thus, the price paid by Texaco was 45,333 per year. Using Mr. Gagliardi's formula, the value of the claimant's interest is between $13,300 and $16,000.

*Id.* at 9–10.

After this adverse ruling, Derrer requested further review by the Appeals Council. Derrer provided a letter from Jim Kelley, the Assessor for Pittsburg County as additional evidence in support of his position. Kelley's letter stated:

> As per our conversation today, the 160 acres in Section B, T#N, R16E, Pittsburg County, State of Oklahoma, is being assessed based on a use value of $80.00/acre. This is based on a combination of market value (25%) and production value (75%).

> The only sale I know of in that area is the Ti Valley Ranch and it sold for $65.00/acre. The 160 acres in question does not have the access that the Ti Valley Ranch does. Therefore the market value of the 160 acres is probably something considerably less than $65.00/acre.

*Id.* at 100. In its opinion on Derrer's request for review, the Appeals Council concluded that the ALJ's decision was correct. It reasoned that Mr. Kelley's letter "was insufficient to overcome other evidence of record" because there is no indication that Kelley was aware of the terms or value of the lease agreement. It held Gagliardi's formula to be the more credible approach to valuation because, "[a]s an independent broker, who arranged your lease agreement, Mr. Gagliardi is in the best position to estimate the value of your land along with the gas and oil rights, and it is unlikely that he would overestimate the value." *Id.* at 3. On November 13, 1990, Derrer commenced the instant action for review of the Secretary's final decision.

## II. ISSUES

### A. *Sufficiency of the Evidence Supporting the Secretary's Valuation.*

In an action for review of the Secretary's final decision, the Secretary's ruling will be upheld if it is supported by substantial evidence. *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 776 (10th Cir.1990). "The determination of whether substantial evidence supports the Secretary's decision is not simply a 'quantitative exercise,' for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion." *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir.1989). Substantial evidence has been defined as " 'sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion.' " *Potter v. Secretary of Health & Human Servs.*, 905 F.2d 1346, 1348 (10th Cir.1990) (citation omitted). Derrer contends that the Secretary's valuation of the property at $13,300 to $16,000 is not supported by substantial evidence. I agree.

Financial eligibility requirements for SSI benefits are set forth at 42 U.S.C. § 1382(a). Under this statute, a disabled person may receive SSI benefits if his income and resources do not exceed certain annual limits. In 1989, the limit applicable to Derrer for resources was $2,000. *See Id.* § 1382(a)(3)(B). (Derrer's income, not at issue in this case, is subject to a separate limit.) Social security regulations governing the valuation of resources provide that nonliquid resources, defined as "property which is not cash and which cannot be converted to cash within 20 days," 20 C.F.R. § 416.1201(c)(1), are "evaluated according to their equity value," *id.* Nonliquid resources include land. *Id.* "Equity value" is defined as "[t]he price that [the] item can reasonably be expected to sell for on the open market in the particular geographic area involved," less any encumbrances. *Id.* § 416.1201(c)(2).

The question in this case is whether the Secretary's determination that the equity value of Derrer's interest in the Oklahoma property, a nonliquid resource, is based on substantial evidence. The record contains four estimates of the property's market value: that of Derrer, Junior Kelly, the County Assessor and Gagliardi. Estimates by the first three parties establish the property's total value between $37.50 and $80 an acre, or approximately $6,000 to $12,800. (The value of Derrer's interest would be one-third of these amounts). Both Kelly and the County Assessor noted the inaccessibility of the property, and there is other evidence that it is rugged and barren. In addition, the County Assessor stated that other property in the area, with better access, sold for only $65.00 an acre and that "the market value of the 160 acres is probably less." R. at 100.

Despite the bulk of the evidence placing the property's value at approximately $37.50 to $80 an acre, the Secretary relied on evidence provided by Gagliardi equating to a property value of approximately $249 to $300 an acre. The Secretary's rationale in accepting Gagliardi's estimate over that of Derrer, Kelly and the County Assessor was two-fold. First, he rejected the lower estimates because there was no indication that they took into account the separate value attributable to mineral interests, as evidenced by the lease of exploration rights. However, as Derrer aptly notes, the SSA's own procedures for valuing mineral interests, contained in its Program Operations Manual System (POMS), provide

that "[i]f the individual owns the land to which the mineral rights pertain, the CMV [current market value] of the land can be assumed to include the value of the mineral rights. Additional development is unnecessary." POMS, SI 01140.110.110.B.2.a. Thus, the Secretary's rejection of Junior Kelly and the County Assessor's estimates of market value because they did not take into consideration the separate value attributed to Derrer's mineral interest does not comply with the SSA's own procedures when, as here, the applicant owns both the surface and mineral rights in property.

Second, the Secretary concluded that, "Mr. Gagliardi is in the best position to estimate the value of your land along with gas and oil rights, and it is unlikely that he would overestimate the value." While Gagliardi's estimate is entitled to some weight, there is no basis in the record to support the complete deference to his opinion over that of the County Assessor and Kelly, a real estate broker and appraiser. The record contains a four page "Report of Contact" prepared by an SSA employee containing notes of his telephone call to Gagliardi. The only information relating to valuation appears in three lines, in which the employee wrote, "land & mineral right are valued at approx. 2.5 to 3.0 times the total [amount] in rent paid for total acreage for 1 year." R. at 66. There is nothing in the record indicating whether this formula applies only in the Pittsburg County area, some larger geographic area, or nationwide, and for what time period that formula covered. It appears that Gagliardi simply provided a ballpark figure for estimating the value of mineral rights based on lease value. On the other hand, the market value estimates made by Kelly and the County Assessor took into account local market conditions and the attributes of the property as compared to similar sales in the area, as required by the regulations. *See* 20 C.F.R. § 416.120(c)(2)(i) (equity value is price that property "can reasonably be expected to sell for on the open market *in the particular geographic area involved*").

Contrary to the Secretary's finding, there is no objective basis upon which to disregard the valuations provided by these professionals, who are obviously experienced and familiar with local market conditions. The Secretary fails to justify why a formula based on a multiplier of the annual mineral lease bonus is a more correct method of determining market value than one based on knowledge of local market conditions and comparable sales. Accordingly, there was not "'sufficient relevant evidence in the record that a reasonable person might deem adequate to support the [Secretary's] ultimate conclusion'" that Derrer's property interest had a minimum value of $13,300. *See Potter*, 905 F.2d at 1346. Reliable data, tailored to the local market conditions, indicates that Derrer's one-third interest had a maximum value of $4,266.66, based on the assessed value of 160 acres at $80.00 per acre.[1]

### B. *Applicability of Regulations Governing Income–Producing Property.*

■ Derrer next argues that the Secretary erred in not considering certain regulations governing the exclusion of income-producing resources. The Secretary responds that these regulations do not apply because Derrer's property was not used for trade or business and, regardless, Derrer's resources would exceed the statutory limit under the regulations. I disagree.

The Social Security Act provides that the value of certain property is excluded from the annual limitation on resources. Thus, "property which is so essential to the means of self-support" of the disabled person is excluded in accordance with regulations promulgated by the Secretary. *Id.* § 1382b(2)(B)(3). The regulations governing the valuation of property essential to

---

1. This conclusion is bolstered by the Secretary's acceptance of the $4,266 valuation in a letter to Derrer dated January 25, 1991, based on the 1990 assessment of the property at $80 per acre. *See* Plaintiff's Opening Brief, Exhibit B. The Secretary provides no explanation of his decision to accept this valuation for 1991, but not for the years at issue here, when the two assessments were identical. This alone indicates that the Secretary's position in this case was not substantially justified.

self-support appear at 20 C.F.R. §§ 416.-1220 to –.1224. They provide that

[p]roperty essential to self-support can include real and personal property (for example, land, buildings, equipment and supplies, motor vehicles, and tools, etc.) used in a trade or business (as defined in § 404.1066 of part 404), nonbusiness income-producing property (houses or apartments for rent, land other than home property, etc.) and property used to produce goods or services essential to an individual's daily activities.

*Id.* § 416.1220.

The Secretary's contention that exclusion for resources essential to self-support does not apply to Derrer because the Oklahoma property was not used in a trade or business rests on a misreading of the above regulations. To compute the value of property essential to self-support, the regulations distinguish between income-producing property and property used to provide goods and services. *Id.* §§ 416.1222, .1224. Income-producing property plainly includes both property used in a trade or business and nonbusiness income-producing property. *Id.* §§ 416.1220, .1222. Derrer's interest in the Oklahoma acreage is nonbusiness income-producing property. There is no requirement that it be used in trade or business.

The Secretary likewise errs in asserting that application of the regulations would have no effect on Derrer's eligibility for benefits. The regulations covering nonbusiness income-producing property contain what has been referred to as the 6000/6% rule. Under this rule, up to $6,000 of an individual's equity in the income-producing property is excluded from the resource limit if the property produces an annual return of at least 6% of the excluded equity. *Id.* § 416.1222. In this case, the Secretary concedes that between 1985 and 1991, Derrer received an annual return from the property of approximately $4,600. Assuming a property value of $4,266, Derrer's return on his equity well exceeds the 6 percent requirement. Thus, the entire $4,266 amount is excluded from the $2,000 resource limitation under the 6000/6% rule. The Secretary's failure to consider the applicability of regulations governing property essential to self-support was material error. Because I hold that Derrer is entitled to benefits under the regulations, I do not reach the question of their validity.

## III. CONCLUSION

The Secretary's final decision denying Derrer benefits because his resources exceeded statutory limits is REVERSED. The Secretary's reliance on the ad hoc formula for property value offered by a mineral lease broker ignored the clear weight of the evidence placing the market value of Derrer's interest at a maximum of $4,266. In addition, the Secretary erred in failing to consider the effect of regulations permitting the exclusion of income-producing resources from the annual limitation. Applying the regulations to Derrer, the entire value of Derrer's interest in the property is excludable, and Derrer is not prevented from receiving SSI benefits. Accordingly, this matter is REMANDED to the Secretary for an award of benefits consistent with this opinion.