Hattie BEATTY o/b/o Dorease M.
Beatty, Appellant,

v.

Richard SCHWEIKER, Secretary of
Health and Human
Services, Appellee.

No. 81–2696.

United States Court of Appeals,
Third Circuit.

Argued April 16, 1982.
Decided May 21, 1982.

Christine Luchok Fallon (argued), Neighborhood Legal Services Ass'n, Pittsburgh, Pa., for Beatty.

Larry H. Bailine (argued), Asst. Regional Atty., Dept. of Health & Human Services, Philadelphia, Pa., for Schweiker.

Before SEITZ, Chief Judge, ADAMS, Circuit Judge, and LACEY,* District Judge.

**OPINION OF THE COURT**

SEITZ, Chief Judge.

Hattie Beatty appeals from the district court's order affirming the decision of the

---

* Honorable Frederick B. Lacey, United States District Judge for the District of New Jersey, sitting by designation.

Secretary of Health and Human Services to terminate her daughter Dorease's eligibility for Supplemental Security Income (SSI) benefits. This court has jurisdiction under 28 U.S.C. § 1291 (1976).

### I.

Hattie Beatty, on behalf of her young daughter Dorease, applied for SSI benefits in March 1975. After a protracted appeals process, the Secretary granted Dorease's application. The Secretary awarded her SSI benefits retroactive to March 1975, and paid her approximately $11,500 in September 1979. She also began to receive monthly benefits.

Hattie Beatty was advised that, pursuant to a policy set forth in the SSI claims manual, Dorease would become ineligible for SSI benefits if she had more than $1,500 in resources on January 1, 1980. On that date she had more than $1,500 resulting from the lump sum payment, and the Secretary determined that she was no longer eligible for SSI. Beatty challenged the Secretary's decision.

After administrative determinations upholding the decision, Beatty petitioned for review in the district court pursuant to 42 U.S.C. § 405(g) (1976) and 42 U.S.C. § 1383(c)(3) (1976). The district court granted the Secretary's motion for summary judgment, affirming the termination of eligibility. Beatty appeals.

### II.

The sole issue on this appeal is the legality of the Secretary's practice of regarding as resources lump sum retroactive SSI payments that are not "spent down" in the quarter following receipt. Section 12501(b) of the SSI Claims Manual sets forth the practice and its rationale:

> SSI payments are never treated as income to the SSI recipient. Such cash payments made to the individual on a timely basis; i.e., on a regular basis each month, will become resources if retained into the following quarter with one exception. When a recipient receives retroactive SSI payments, the payments are excluded as resources both in the quarter of receipt, and in the following quarter. Only in this instance will the individual be allowed an additional quarter to reduce his resources in order to maintain his eligibility. The additional quarter will allow the individual sufficient time to reduce his resources when the individual receives an SSI retroactive check. Normally, a large portion of a retroactive check will be spent to repay debts incurred during the months that the individual did not receive checks or received incorrect payment amounts.

■ In deciding the legality of the Secretary's practice, this court does not substitute its judgment for that of the Secretary's. We accord considerable deference to the Secretary's interpretation of the SSI statute. *See EPA v. National Crushed Stone Ass'n*, 449 U.S. 64, 83, 101 S.Ct. 295, 306, 66 L.Ed.2d 268 (1980); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). We also accord great deference to the interpretation of administrative regulations by the officials responsible for their implementation. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). Indeed, we will uphold the Secretary's interpretation of the regulations "unless it is plainly erroneous or inconsistent with the regulation[s]." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945).

In order to be eligible for SSI, a single individual may not have resources of more than $1,500. 42 U.S.C. § 1382(a)(1)(B)(ii) (1976). Section 1382(a)(1)(B) does not define resources except by negative implication; it provides that resources do not include the resources named in 42 U.S.C. § 1382b(a) (1976 & Supp. III 1979). That

section excludes resources such as the individual's home, household goods, personal effects, an automobile, and other property necessary for self-support. Thus, section 1382(a)(1)(B) appears to authorize the treatment of unspent SSI payments as resources.

The Secretary, pursuant to his authority under 42 U.S.C. § 1302 (1976), has promulgated regulations that further define resources. In particular, 20 C.F.R. § 416.-1201(a) (1981) provides that resources include "cash or other liquid assets." *Accord,* 20 C.F.R. § 416.120(c)(3) (1981). Unspent SSI payments clearly fall within this definition. Additionally, however, 20 C.F.R. § 416.1210(j) (1981) provides that, "Payments or benefits provided under a Federal statute other than [SSI] where exclusion is required by such statute" shall be excluded from the computation of an individual's resources. The meaning of this regulation is in dispute.

The Secretary's argument is straightforward. He contends that unspent retroactive SSI payments are not "[p]ayments . . . provided under a Federal statute other than [SSI]," and therefore cannot be excluded under section 416.1210(j). The Secretary's interpretation recognizes that the primary purpose of SSI is to guarantee a minimum level of income to individuals who are over 65, blind, or disabled, and "who do not have the income and resources to maintain a standard of living at the established Federal minimum income level." 20 C.F.R. § 416.110 (1981). *See* H.R.Rep.No.92–231, 92d Cong., 2d Sess. 147, *reprinted* in [1972] U.S.Code Cong. & Ad.News 4989, 5133. A recipient such as Beatty is able to maintain a minimum standard of living by spending the retroactive SSI benefits she has that are in excess of the $1,500 limit.

Beatty argues that section 416.1210(j) applies only to "[p]ayments . . . provided under a Federal statute other than [SSI]," and

thus that the regulation implies nothing about how SSI payments are to be treated. Beatty finds additional support for this proposition in the fact that the exclusion from resources language of section 416.-1210(j) is identical to the exclusion from income language of 20 C.F.R. § 416.1145(a) (1980).[1] Beatty notes that an SSI lump sum retroactive payment is not counted as income, *see* SSI Claims Manual § 12510(b), and argues that it would be inconsistent to count it as resources.

■ We believe that section 416.1210(j) does not explicitly address the question of how to treat SSI payments. We believe that the regulation's silence on this question supports the Secretary's interpretation of the regulation. When a regulation "is silent on the point in issue between the parties, . . . an administrative agency's interpretation of [that] regulation is entitled to great deference." *Baldwin County Electric Membership Corp. v. Price Commission,* 481 F.2d 920, 923 (Temp.Em.Ct.), *cert. denied,* 414 U.S. 909, 94 S.Ct. 230, 38 L.Ed.2d 147 (1973).

■ We do not attribute much significance to the fact that, although both the exclusion from resources regulation (section 416.1210(j)) and the exclusion from income regulation (section 416.1145(a)) are silent about how retroactive SSI payments are to be treated, the Secretary counts them as resources but not as income. We do not decide the validity of the Secretary's interpretation of section 416.1145(a), because that question is not before us. Given our function as a reviewing court, we think that it is enough that there is a reasonable basis in the statutory scheme to support the Secretary's interpretation of section 416.-1210(j), and that, assuming the validity of section 416.1145(a), the Secretary's explanation in the SSI Claims Manual provides a reasonable basis for treating the two regulations differently.

1. This regulation has since been reworded and renumbered. *See* 20 C.F.R. § 416.1112(b) (1981); 20 C.F.R. § 416.1124(b) (1981). The changes were designed "to make [the] rules clearer and easier to understand." 45 Fed.Reg. 65,547 (Oct. 3, 1980).

Thus, we do not believe that the Secretary's interpretation of section 416.1210(j) is plainly erroneous. That is not the end of our inquiry, however, for we must now consider whether the Secretary's interpretation of the regulation is consistent with the statutory scheme under which it was promulgated. *See United States v. Larionoff,* 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977).

## III.

We think that the Secretary's treatment of lump sum retroactive payments for purposes of resources computation is faithful to the basic statutory purpose of providing benefits to those who otherwise would have insufficient means to maintain a minimum standard of living. As a general matter, treating SSI payments, if saved, as resources makes sense. If an individual has cash assets in excess of the $1,500 limit, he should not be regarded as a needy individual for SSI purposes, regardless of how he obtained the assets. *But see* 20 C.F.R. § 416.1236(a) (1981) (listing statutes that provide cash benefits that may be excluded from resources).

Beatty argues that SSI payments may not be included as resources because of 42 U.S.C.A. § 1383(b)(1) (West Supp.1982), which provides that:

> Whenever the Secretary finds that more or less than the correct amount of benefits has been paid with respect to any individual, proper adjustment or recovery shall ... be made by appropriate adjustments in future payments to such individual or by recovery from or payment to such individual. . . . The Secretary shall make such provision as he finds appropriate in the case of payment of more than the correct amount of benefits with respect to an individual with a view to avoiding penalizing such individual ... who was without fault in connection with the overpayment. . . .

This section allows the Secretary to remedy underpayments either by making a lump sum payment or by raising monthly payments. *See* 20 C.F.R. § 416.542(a) (1981). Beatty argues that section 1383(b)(1) creates an additional category of excluded resources, that of lump sum retroactive SSI benefits. Beatty finds support for this conclusion in both the language and the legislative history of section 1383(b)(1).

### A. *Language*

Beatty argues that the language of section 1383(b)(1) is contrary to the Secretary's interpretation. Specifically, Beatty points to the language, "proper adjustment ... shall ... be made in future payments ... or by ... payment to such individual." Beatty argues: (1) that the language requires a "proper adjustment," and that the section 12501(b) practice does not constitute a proper adjustment in Beatty's case, because it does not "make her whole" for the earlier wrongful denial of benefits; and (2) that the section 12501(b) practice penalizes an individual such as Beatty, and that the explicit provision against penalizing individuals who have collected overpayments should also apply to individuals who have been underpaid. We are not persuaded by either of these arguments.

We believe that the requirement in section 1383(b)(1) that a proper adjustment be made necessitates only that the Secretary make the retroactive payment in a sum equivalent to the amount of benefits that were incorrectly denied. Beatty argues that, from her point of view, a better method of making an adjustment would have been to pay her an extra $500 per month for twenty-three months. Beatty may well be correct that she could spend $500 per month for twenty-three months more easily and usefully than she could spend $11,500 in three months. The statute does not, however, require that the Secretary make the adjustment in the manner the recipient wishes; it merely requires a proper adjust-

ment. The statute and the regulations specifically provide that retroactive benefits may be made in one or multiple payments. Beatty was owed $11,500, and she received it. We believe that that is a proper adjustment.

We do not believe that the statutory prohibition against penalizing recipients of overpayments also applies to recipients of underpayments. We are persuaded that this is the correct interpretation of section 1383(b)(1) for two reasons. First, the statutory language only addresses the possible penalization of recipients of overpayments. There is simply no basis in the language for inferring that penalization of recipients of underpayments was also to be avoided. Second, we do not believe that reading language into the statute is warranted, because the concept of penalization of recipients of overpayments and of underpayments are two quite different ideas. The Secretary's practice does not penalize Beatty in nearly the same manner as the recovery of overpayments might penalize other individuals. If the Secretary were to terminate an individual's current payments to recoup previous overpayments, the recipient may have nothing on which to live. The penalization that the provisions for waiver of overpayment are designed to avoid are of a different order of magnitude from whatever hardship Beatty will suffer. By definition, despite the termination of benefits, Beatty is able to maintain a standard of living at the federal minimum income level.

### B. *Legislative History*

Beatty's analysis of the legislative history relies solely on one passage of the House Report:

[I]f less than the correct amount of benefits had been paid, the Secretary would pay the balance due to the underpaid individual. If the individual dies before the amount due has been paid to him, or before he negotiates the check representing the correct payment, the amount due would be paid to his eligible spouse, if there is one, and the payment would not be taken into account in determining the spouse's need under this program. Underpayments, however, would not be paid to the estate of a deceased individual since that would not further the objective of meeting the current needs of individuals.

H.R.Rep.No.92–231, 92d Cong., 2d Sess. 155, *reprinted* in [1972] U.S.Code Cong. & Ad. News 4989, 5141. Beatty argues that this passage shows that the Secretary's section 12501(b) practice treats an individual who receives lump sum retroactive payments less favorably than Congress intended to treat an eligible spouse of a deceased individual who receives lump sum retroactive benefits.

Beatty relies on the language, "the payment would not be taken into account in determining the spouse's need." Beatty assumes that this language evidences a congressional intent not to have such a payment ever be taken into account in computing resources. We do not think that it is so clear that this assumption is justified. We think that this language probably was intended to suggest only that the payment would not be counted as income to the spouse.[2] This interpretation would be consistent with the quoted passage as a whole, which emphasizes the current need of the recipient. Treating lump sum payments as resources is also consistent with a recognition that to not so treat it requires more paperwork and may be more difficult to administer. *See* 20 C.F.R. § 416.1236(b) (1981) (funds paid under section 416.1210(j) will be counted as resources unless "such funds [are] segregated and not commingled with other countable resources so that the

2. There is no evidence in the record to suggest how the Secretary treats such a payment to an eligible spouse of a deceased beneficiary. And

20 C.F.R. § 416.542(b) (1981) is silent on this question.

excludable funds are identifiable"). In any event, we do not think that the quoted language so convincingly supports Beatty's position that we will not defer to the Secretary's interpretation of the statute.

## IV.

Thus, while we appreciate the apparent inequity of Beatty's being denied current benefits because she was denied benefits for over four years, we do not think that the Secretary's practice, as embodied in SSI Claims Manual § 12501(b), is "plainly erroneous" or unreasonable. We note that the Secretary gives an individual who receives a lump sum retroactive payment a minimum of three months before that payment is counted as resources. *Cf.* H.R.Rep.No.92–231, 92d Cong., 2d Sess. 26, *reprinted* in [1972] U.S.Code Cong. & Ad.News 4989, 5013 ("The Secretary would prescribe periods of time and manners in which excess property must be disposed of in order that it not be included as resources."). As the SSI Claims Manual explains, it is expected that much of that lump sum will be needed to pay off debts incurred while the applicant was eligible for SSI but did not receive benefits.[3]

We will affirm the judgment of the district court.

---

**3.** Administrative agencies and officers have a primary task to administer broad policy mandates for the common good of our society and they cannot be required to refine their rules to assure tailor-made equity for each of the complexities that may arise. If they issue and interpret regulations which are rational and supportable in general application, they cannot necessarily be charged with unreasonableness because in particular applications the regulations and general interpretations may grind with a rough edge.

*Gulf Oil Corp. v. Hickel*, 435 F.2d 440, 447 (D.C.Cir.1970). At oral argument, the Secretary's counsel stated that the Secretary would not count the lump sum payment as resources if it were placed in an irrevocable trust for the benefit of Beatty's daughter. Although the propriety of this practice is not before us, Beatty's ability to regain her daughter's SSI eligibility by disposing of the money in this manner would soften, to a considerable extent, the "rough edges" of the Secretary's practice.