Fannie CHALMERS, Plaintiff,

v.

Hon. Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant.

Civ. A. No. 92–1407(WGB).

United States District Court, D. New Jersey.

April 13, 1993.

Disability Law Clinic, Seton Hall University School of Law by Stuart H. Weiner, Supervising Atty., Newark, NJ, for plaintiff.

Michael Chertoff, U.S. Atty. by Susan S. Steele, Sp. Asst. U.S. Atty., Newark, NJ, for defendant.

## OPINION

BASSLER, District Judge:

The plaintiff, Fannie Chalmers, through Omega Parraway, her sister, representative payee and guardian ad litem, brings this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff seeks judicial review of the final decision of the Secretary of Health and Human Services ["Secretary"] terminating plaintiff's Supplemental Security Income ["SSI"] benefits, and requests their retroactive reinstatement. For the following reasons, the Court affirms the Secretary's final decision terminating plaintiff's SSI benefits.

## I. BACKGROUND

On April 19, 1978, plaintiff applied for and was awarded SSI benefits based on a psychiatric impairment. J.D. 2.[1] In November of 1989 plaintiff was notified by the Secretary that, effective May 1989, she was no longer eligible to receive these benefits because she had resources in excess of $2,000, and thus failed one of the SSI financial eligibility requirements as set forth in 42 U.S.C. § 1382(a).[2] *Id.* The resources upon which the Secretary relied in making this determination have their source in plaintiff's equitable share in the assets of the estate of her deceased father.

Plaintiff's father, John D. Chalmers, Sr., died intestate in September of 1980. The plaintiff and her three siblings were the sole heirs to their father's estate. R. 200[3]. The only significant assets in his estate were four houses on contiguous lots and a separate 7.5 acre tract of land, all located in North Carolina. The total appraised value of the hous-

es and their lots was $47,000, as of January 1981, and all of the houses and their respective lots were encumbered by a single deed of trust in favor of Gate City Federal Savings and Loan Association ["Gate City"] in the amount of $23,000. R. 237; J.D. 5. The appraised value of the 7.5 acre tract of land was $3,000 as of January 1981. J.D. 5.

Gate City apparently had, and still has, the power to demand full payment of the outstanding loan balance upon any attempted transfer of the encumbered properties. R. 172–174.[4] Based on advice of counsel for the estate, to avoid triggering such a demand by Gate City, plaintiff and her three siblings formed a general partnership, the C & P Land Company ["C & P"], to manage and rent the properties and pay the mortgage. *Id.* C & P was formed in December of 1981, with the plaintiff and her siblings each conveying their respective one-fourth equitable interests in the encumbered properties to C & P in return for a 25% interest in the partnership. R. 110. Although C & P does not have legal title to the encumbered properties, its books reflect them as assets and the partnership's tax returns claim deductions for depreciation on them. R. 217–220.

In 1983, and again in 1986, the Secretary conducted redeterminations of plaintiff's SSI eligibility. R. 7–8. Despite his awareness of the plaintiff's one-fourth interest in C & P, the Secretary apparently determined that plaintiff continued to be eligible for SSI benefits. In 1989, however, the Secretary again redetermined plaintiff's eligibility status and found that she had excess countable resources which had resulted in an overpayment of benefits and necessitated their termination. R. 8. The Secretary affirmed this redetermination on reconsideration and plaintiff requested a *de novo* hearing before an administrative law judge ["ALJ"]. R. 97.

---

1. "J.D." refers to the joint document of stipulated facts submitted by the parties pursuant to General Rule 48.

2. Plaintiff's status as a disabled individual under 42 U.S.C. § 1382(a)(1) is not at issue in this action.

3. "R." refers to the administrative record.

4. The extent of Gate City's powers with respect to the encumbered properties is less than clear from the record because the record does not contain a complete copy of the deed of trust.

In a decision rendered on June 6, 1990, the ALJ found that while plaintiff's one-fourth interest in the real property inherited from her father was not a countable resource, her interest in C & P was countable and exceeded the statutory limit of $2,000. The ALJ also determined that plaintiff had received an overpayment of SSI benefits since May of 1987, but he waived their recovery because plaintiff was not at fault in accepting them, and recovery would defeat the purposes of the Social Security Act. R. 16–17.

The Appeals Council granted plaintiff's request for review of the ALJ's decision on October 18, 1991. In its own decision of January 24, 1992, the Appeals Council essentially adopted the ALJ's findings and conclusions, except that it found that plaintiff's eligibility for SSI benefits had ended as of April 1989 instead of May 1987. R. 6–9. Unlike the ALJ, however, the Appeals Council also concluded that plaintiff's one-fourth interest in the inherited real property was a countable resource. The ALJ had based his decision to exclude plaintiff's real property interest on the undisputed fact that plaintiff is not the sole owner of the real property. From this the ALJ concluded that because plaintiff does not control the property, she has no power to convert it to cash and use the cash for her support and maintenance, as required under 20 C.F.R. § 416.1201(a). R. 15.

The Appeals Council, in contrast, reasoned that plaintiff's equitable interest in the real property is countable because there was no evidence to suggest that plaintiff's mental incapacity had removed her power to partition the property. R. 9. Since this Court finds substantial evidence to support the conclusion, reached by both the ALJ and the Appeals Council, that plaintiff has the legal right to liquidate her partnership interest, it declines to address the diverging conclusions below with regard the countability of plaintiff's interest in the inherited real property.

On March 31, 1992, plaintiff commenced the present action for review of the Appeals Council's decision, which constitutes the final decision of the Secretary.

## II. DISCUSSION

In reviewing a final decision of the Secretary, the Court must independently review the Secretary's conclusions of law. *See, e.g., Townley v. Heckler,* 748 F.2d 109, 112 (1984). If the correct legal standard has been applied by the Secretary, the Court must decide if the Secretary's decision is supported by substantial evidence. *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987). The Court's function in performing this determination is not to substitute its interpretation of the evidence for that of the Secretary. *Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982), *cert. denied,* 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983). Instead, the Court must affirm the Secretary's findings of fact if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir.1986). The United States Supreme Court defines substantial evidence as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

In this action plaintiff challenges the final decision of the Secretary on two grounds. First, plaintiff takes issue with the Secretary's conclusion that her partnership interest is a countable resource exceeding $2,000, thus preventing her from meeting the financial eligibility requirements for receipt of SSI benefits. Second, plaintiff argues that the Secretary improperly reopened its initial determination of plaintiff's eligibility for these benefits.

### A. *The Issue of Plaintiff's Partnership Interest as a Countable Resource*

Financial eligibility requirements for SSI benefits are set forth at 42 U.S.C. § 1382(a). Under this statute, a disabled individual may receive SSI benefits if his or her income and resources do not exceed certain annual limits. For eligibility beginning January 1, 1989, the limit applicable to plaintiff's resources is $2,000. 42 U.S.C.

§ 1382(a)(3)(B).[5]

The statute does not define "resources", but merely provides a list of certain items which are excludible in their determination. 42 U.S.C. § 1382b(a). However, pursuant to his authority under 42 U.S.C. § 1302, the Secretary has promulgated regulations that further define resources. *See Beatty v. Schweiker,* 678 F.2d 359, 361 (1982). More particularly, 20 C.F.R. § 416.1201(a), in pertinent part, defines resources as "any real or personal property interest that an individual ... owns and could convert to cash to be used for his or her support and maintenance." Furthermore, and crucial to the disposition of the instant action, the regulation also provides that "[i]f an individual has the *right,* authority or power to liquidate the property or his or her share of the property, it is considered a resource." 20 C.F.R. § 416.1201(a)(1) (emphasis added).

The basis of plaintiff's first claim is that the Secretary improperly applied 20 C.F.R. § 1201 to the underlying facts in the record by including her interest in C & P as a countable resource. More specifically, plaintiff contends that "her interest in ... [the partnership was] beyond her *power* to liquidate and utilize for her self-support and that, consequently, [it] may not be treated as [a] countable resource[ ] under the regulations of the SSI program." Plaintiff's Brief at 5 (emphasis added).

Factually, plaintiff bases her claim on evidence in the record which is not disputed by the Secretary. It has been stipulated that plaintiff is severely mentally impaired. J.D. at 2. The record also contains evidence that plaintiff is unable to manage her daily affairs, but instead relies almost exclusively on her sister. R. 35–39. Based on these facts plaintiff argues that, realistically, it would be impossible for her to retain an attorney or follow any other course of action to liquidate her partnership interest, and thus the interest is beyond her power to realize, and hence not a "resource".

While it is difficult not to sympathize with plaintiff's plight, her argument cannot find support in the law. The Secretary has defined the term "resources" in 20 C.F.R. § 416.1201(a)(1). As the Secretary maintains, this definition is worded in the disjunctive, and so long as plaintiff possesses the *right* to liquidate her 25% property interest in C & P (as plaintiff concedes in her brief; *see also* R. 112 (partnership agreement)), it is a countable resource under the regulation and hence 42 U.S.C. § 1382(a), wholly irrespective of her power or authority (or lack thereof) to so liquidate it. It should also be noted that plaintiff has not contended that the regulation is inconsistent with the statute, but in any event, the Court notes that it must "accord considerable deference to the Secretary's interpretation of the SSI statute." *Beatty v. Schweiker,* 678 F.2d at 360.

The above interpretation of the regulatory definition by the Secretary, as *applied to the facts of this case,* must also be shown great deference by the Court. *Beatty,* 678 F.2d at 360. Additionally, at least one court in the District of New Jersey has independently applied 20 C.F.R. § 416.1201(a) to reach a result identical to that of the Secretary in the instant case. In *Gaita v. Heckler,* No. 83–4141, slip op. at 7 (D.N.J. May 15, 1984) (opinion of Lacey, J.), the court determined that a mortgage owned by a mentally impaired claimant was a countable resource despite an alleged lack of power or authority to sell it, due to the claimant's impairment, simply because the claimant had the right to sell as specified in 20 C.F.R. § 416.1201(a).

Other courts have also found a Social Security claimant to have countable resources based on the claimant's legal rights to dispose of property, despite circumstances that made liquidation or realization difficult. In *Vander Meer v. Bowen,* No. 88–5072, 1989 WL 6661 (N.D.Ill. January 19, 1989), for example, the court held that an SSI claimant's countable resources included a money market fund owned in the claimant's name, even though the claimant asserted, and the court apparently agreed, that she was actually unaware of the fund's existence at the time she applied for benefits, and that this made it

---

5. A disabled individual's income is subject to a separate limitation under 42 U.S.C. § 1382(a). Plaintiff's income is not at issue in this case.

impossible for her to liquidate the account. The court noted that "[claimant's] construction flies in the face of the plain language of [20 C.F.R. § 416.1201(a)].... Thus, the fact that she was unaware of the fund is of no moment." *Id.*, slip op. at 2. *See also Derrer v. Sullivan*, 768 F.Supp. 765 (D.Colo.1991) (concluding that the equity value of a one-third undivided interest in the surface and mineral rights of undeveloped land is countable as a resource).

In an attempt to avoid the result reached by the Secretary through construction and application of his own definition of the statutory term "resources", plaintiff cites several cases involving this regulation. Plaintiff first relies on *Waldron v. Secretary of Health and Human Services*, 661 F.Supp. 43 (W.D.N.Y. 1987), where the court reversed the Secretary's termination of a claimant's SSI benefits due to excess resources. At issue there was whether a tenant house on claimant's property, then in a state of disrepair, was properly counted as a resource by the Secretary. *Id.* at 45. The court held that, based on the uncontradicted record, the tenant house was in such poor condition that it could not be sold "as is". *Id.* at 46. It also noted that the claimant did not have the wherewithal to pay for repairs necessary to make the tenant house a "resource", and that the Secretary's belief otherwise was "unsupported speculation". *Id.*

*Waldron* is factually distinguishable from the present case. At bottom, *Waldron* turns on the uncontroverted evidence in the record that the tenant house, in its then present state, was valueless and thus not countable as a resource. In the present case, on the other hand, the record contains undisputed evidence of, and there has been a stipulation of facts as to, the value the North Carolina real property, and hence the partnership interest of the plaintiff. See J.D. 5. To be sure, the court in *Waldron* also emphasized the fact that the claimant there was an ailing, elderly widow. 661 F.Supp. at 46. But, as noted above, although plaintiff here is equally entitled to our sympathies, this ought not cloud the otherwise clear language of the Secretary's regulation.

Plaintiff also argues that the Third Circuit's decision in *Cannuni on Behalf of Cannuni v. Schweiker*, 740 F.2d 260 (3d Cir.1984) supports her contention that the C & P partnership interest is not a countable resource. In *Cannuni*, the issue was whether the Secretary had properly counted as resources several certificates of deposit and a bank account established by the claimant's parents jointly in their names and the name of the claimant. *Id.* at 261. In reversing the district court's decision to affirm the Secretary, the court did not strictly rely on the definition of "resources" as provided in 20 C.F.R. § 416.1201(a), apparently because its application to the specific property at issue, bank deposits, was not sufficiently clear. *Id.* at 264. Instead, the court noted "that in referring to 'resources', Congress intended the term to mean property the claimant owns or has the current right to use for his own benefit." *Id.*

The court also determined that "[i]n the absence of any specific federal standards or principles classifying the bank deposits as resources, it is appropriate to refer to state property law to determine the extent of [the claimant's] interest in the accounts." *Id.* Analyzing Pennsylvania law, the court then concluded that the record had "fail[ed] to establish that [claimant] at any time owned or controlled all or any part of a bank account or certificates of deposit", *id.* at 265, and that therefore the claimant possessed no resources. *Id.*

In analyzing *Cannuni*, this Court first notes that although the matter is not entirely free from doubt, it appears that the regulatory definition of "resources" is sufficiently specific in relation to the facts of the present action to apply to plaintiff's partnership interest. 20 C.F.R. § 416.1201(c), which defines "nonliquid resources", also provides a number of examples of assets which qualify under the definition, including "buildings and land". *Id.* Although, as noted above, the issue here is not whether plaintiff's equitable interest in the North Carolina real property is countable as a resource, because her partnership interest derives its value solely from the use of these assets, it would appear that

it, too, is a "nonliquid resource" under the Secretary's regulation.

Additionally, in full conformity with *Cannuni*, it is beyond doubt that due to plaintiff's powers under the C & P partnership agreement, and unlike the claimant in *Cannuni*, she both owns her partnership interest and has the current right to its beneficial use, including dissolution of the partnership or sale of the interest. Thus, even if the Secretary's definition of "resources" is ignored, and the focus is instead placed upon plaintiff's rights (the existence of which plaintiff has not disputed under North Carolina law, which governs the partnership, R. 113) under the partnership agreement, this Court would still conclude that the interest in C & P is a countable resource. It should be noted, however, that it is this Court's opinion that the Secretary's definition of "resources" applies to the facts of this case, and that the Secretary has properly applied this legal standard.

Finally, *Navarro by Navarro v. Sullivan*, 751 F.Supp. 349 (E.D.N.Y.1990), also referenced in plaintiff's brief, lends no support to plaintiff's argument. In *Navarro*, claimant was the beneficiary of a medical malpractice settlement order which imposed specific limitations on the use of the settlement funds. *Id.* at 350. The Secretary had argued that because the admitted purpose of the use limitations specified in the settlement order was to prevent discontinuance of claimant's SSI benefits, the order could not bind the government, and hence the funds should have been considered resources. *Id.* The court simply found that the settlement order was binding on the Secretary, notwithstanding the purpose of its drafting, and that the limitations specified within it were such that the funds were not available for the claimant's support and maintenance. *Id.*

*Navarro* demonstrates a straightforward application of 20 C.F.R. § 416.1201(a), and is therefore consistent with this Court's determination that plaintiff's partnership interest is a countable resource. In *Navarro* the claimant had no legal right, authority or power, in terms of the Secretary's regulation, to utilize the settlement funds for support and maintenance. In contrast, the record in this action demonstrates unequivocally that plaintiff has the legal right to convert her partnership interest to cash, which could be used without restriction for her support and maintenance.

In summary, based on substantial evidence in the record as a whole, this Court cannot agree with plaintiff's first argument, that her one-fourth interest in the C & P partnership is not a resource, as the term is used within the Social Security Act. Accordingly, plaintiff has resources in excess of the statutory limitation of $2,000, as provided in 42 U.S.C. § 1382(a), and is thus ineligible for SSI benefits.

B. *The Issue of Whether the Secretary Improperly Reopened the Initial Determination of Plaintiff's Eligibility*

█ Plaintiff also contends that, notwithstanding any outcome adverse to her with regard to the countability of her partnership interest as a resource, the Secretary reopened its prior determination of her eligibility for continued SSI benefits in violation of his own regulations. This contention is based on the fact that while plaintiff's father died in 1980 and his estate was settled in 1981, the Secretary did not determine plaintiff to be financially ineligible until 1989, despite the Secretary's apparent awareness of at least her one-fourth interest in the North Carolina real property, as early as 1983. Plaintiff's Brief at 16; R. 8 (opinion of Appeals Council). In other words, plaintiff claims that the Secretary's 1989 redetermination of her eligibility status, which is the origin of her present denial of benefits, was really a reopening of her initial grant of SSI benefits, which occurred in 1978. Plaintiff asserts that such a reopening violates 20 C.F.R. § 416.1488(b) because it was not done within the prescribed two year period.

A reopening and revision of a prior determination or redetermination of eligibility for SSI benefits is permitted, among other instances, "within two years of the date of the notice of the initial determination if ... [the Secretary] find[s] good cause, as defined in § 416.1489, to reopen the case ..." 20 C.F.R. § 416.1488(b). The apparent purpose of such a reopening is to allow the claimant

to furnish the Secretary with new and material evidence or correct a clerical error, before an initial determination becomes final and binding. 20 C.F.R. § 416.1489(a); *see also Singer v. Secretary of Health & Human Services,* 566 F.Supp. 204, 210 (S.D.N.Y. 1983).

On the other hand, a redetermination, as defined in 20 C.F.R. § 416.204(a), is "a review of [a claimant's] eligibility to make sure that ... [claimant is] still eligible[.] ... This review deals with the requirements for eligibility other than whether ... [claimant is] still disabled or blind." The Secretary conducts such redeterminations "on a scheduled basis at periodic intervals", *id.* at § 416.204(b)(1), and when the claimant informs, or the Secretary otherwise learns of, a change in the claimant's eligibility status, *id.* at § 416.204(b)(2).

The Secretary maintains, and it is obvious from the record, that what occurred in the present matter was a redetermination of plaintiff's eligibility status under 20 C.F.R. § 416.204, and not a reopening of a previous determination or decision. The record indicates that the Secretary's 1989 action was the third redetermination conducted since the original grant of benefits in 1978, the others occurring in 1983 and 1986. R. 7; Defendant's Brief at 6. This redetermination did not involve a review of plaintiff's disability, as provided in 20 C.F.R. § 416.204(a). This review was not undertaken because new and material evidence had come to the attention of the Secretary, as would be the case if the Secretary's action were a reopening pursuant to 20 C.F.R. § 416.1488(b). Finally, the Appeals Council specifically limited its finding of excess resources to the period beginning in April of 1989, the month of the current redetermination, in accordance with 20 C.F.R. § 416.204(c)(2) (defining the period to which a redetermination applies). In short, all of the evidence of record indicates that the Secretary undertook a redetermination of plaintiff's eligibility for SSI benefits in 1989, as permitted under 20 C.F.R. § 416.-204. Accordingly, plaintiff's claim otherwise is without merit, and her reliance on *Singer v. Secretary of Health & Human Services,* 566 F.Supp. 204 (1983), which dealt with the

reopening of a decision under 20 C.F.R. § 416.1488(b), is misplaced.

### III. CONCLUSION

For the reasons stated, this Court affirms the Secretary's decision terminating plaintiff's SSI benefits as of April 1989.