Singer v. SSA                        CV-02-387-M    09/02/03
                    UNITED STATES DISTRICT COURT

                       DISTRICT OF NEW HAMPSHIRE


Robert Singer
o/b/o Joyce Singer,
        Claimant

        v.                                    Civil No. 02-387-M
                                              Opinion No. 2003 DNH 152
Jo Anne B. Barnhart,
Commissioner, Social
Security Administration,
        Respondent


                          **O R D E R**


        Pursuant to 42 U.S.C. § 405(g), claimant moves to reverse

the Commissioner's decision finding Joyce Singer ineligible for

supplemental security income ("SSI") benefits, as well as her

determination that Ms. Singer had been overpaid (between May 1998

and November 2000) because she had disqualifying resources during

that period.  The Commissioner, in turn, moves for an order

affirming the decision.  For the reasons given below, the

decision of the Appeals Council is reversed and the matter is

remanded.

## Standard of Review

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB decisions); see also 42 U.S.C. § 1383(c)(c) (establishing § 405(g) as the standard of review for SSI decisions). However, the court "must uphold a denial of social security . . . benefits unless 'the [Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

The Commissioner's findings of fact must be supported by substantial evidence in the record. "The substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts."

Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)). In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).[1]

## Background

Joyce Singer ("Joyce") has been receiving Social Security disability insurance benefits since 1981 and has been receiving

---

[1] "It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." Irlanda Ortiz, 955 F.2d at 769 (citations omitted). Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988).

Social Security supplemental security income since 1983. Joyce's father, Robert Singer ("Singer"), an attorney, serves as Joyce's representative payee. Joyce's benefit payments are directly deposited into an account at Citizens Bank. Singer also claims to have made deposits into that account from time to time for Joyce's benefit. (Jt. Statement of Material Facts at 6.) However, the record contains insufficient evidence from which to determine the dates or the amounts of Singer's deposits. The account is titled: "Robert Singer Trustee for Joyce Singer." (Jt. Statement at 2.) Since he opened the account, Singer has operated it as he would a client trust account, including reporting on it to the New Hampshire Supreme Court in the same way he reported on his actual client trust account.

In December 2000, the Commissioner stopped paying Joyce's SSI benefit after determining that her available financial resources exceeded the statutory limit of $2,000, beginning in May of 1998. That determination was based exclusively on the monthly balances of the Citizens Bank account. Singer concedes that the account did contain more than $2,000 from May 1998

through November 1, 2000.[2]  (Administrative Transcript ("Tr.") at

50.)


    Singer sought reconsideration of the initial determination,

on grounds that the bank account was actually a trust, the corpus

of which did not count as a resource owned by Joyce.  The

Commissioner's Notice of Reconsideration gave two reasons for

upholding the initial determination:

> 1) There is no formal written document that establishes
> the legal arrangement of a bona fide trust.  I find
> that both you [Singer] and Joyce Singer have
> unrestricted total access to the proceeds.  This means
> that the money is equally hers as it is yours.
> Furthermore, you admit that the balance in the account
> is primarily sourced from Joyce's monthly SSI payments.
>
> 2) The mere titling of an account ("Trustee") does not
> give rise to the automatic foundation of a trust
> agreement or arrangement.  Trusts are often complex
> legal arrangements involving property or ownership
> interests.  But this account, which was established in
> 1983 and which you wish to call a trust is, in fact, a
> simple checking account.  Therefore, it is to be
> included in counting the claimant's resources.  At this
> time, the claimant, Joyce, has more than $2000.00 which
> causes her to be over the SSI resource limit.

(Tr. at 56.)

_____

[2] In May 1998, the account held $2,973.78, and in October
2000, it held $3,284.  Between those two dates, it held as much
as $3,308.14 and as little as $2,324.  (Tr. at 77.)

Singer requested a hearing before an ALJ, which was held in Manchester, New Hampshire, on August 22, 2001.  After collecting additional evidence from employees of Citizens Bank, the ALJ issued a decision that was fully favorable to claimant.  Based upon the history of the bank account, including the bank's statement that Joyce would not be allowed to withdraw funds from it, and based upon the New Hampshire Supreme Court's decision in Lanoue v. Commissioner, Social Security Administration, 146 N.H. 504 (2001), the ALJ found that the account constituted an irrevocable trust "for purposes of determining countable resources for supplemental security income for disability."  (Tr. at 20.)  Consequently, he ruled that the "trust does not impact the claimant's eligibility for supplemental security income for disability."  (Tr. at 20.)

The Appeals Council took up the matter on its own motion, after receiving a memorandum from the Office of the Boston Regional Commissioner questioning the ALJ's decision.  (Tr. at 125-26.)  The Appeals Council made the following relevant findings:

1.  A checking account at Citizen's Bank set up by Robert Singer as a trust account, "Robert Singer: Trustee (in trust for) Joyce Singer," was established with Joyce B. Singer's funds and contains funds belonging to Joyce B. Singer.

2.  Joyce B. Singer is the grantor and sole beneficiary of the trust account.

3.  The trust account may be revoked by Joyce B. Singer or someone acting as her agent.

4.  The funds in the trust account are countable as resources of Joyce B. Singer for supplemental security income purposes.

5.  The Social Security Administration correctly determined that Joyce B. Singer was not eligible for supplemental security income for months beginning May 1998 because of excess resources and had been overpaid.

(Tr. at 9.)  Based upon those findings, the Appeals council reached the following conclusion:

> Upon consideration of the evidence and the applicable law, the Appeals Council has concluded that the trust account at Citizen's Bank is revocable by Joyce B. Singer or a person acting on her behalf under general trust law because she is both the grantor of the trust and the sole "beneficiary," that the trust principal is countable as a resource of Joyce B. Singer for purposes of determining her eligibility for supplemental security income for that reason, and that the Social Security Administration correctly determined that she received an overpayment of supplemental security income because of excess resources.

7

(Tr. at 6.)  This appeal followed.

## Discussion

Claimant argues that the Appeals Council erred in finding that the "trust account created for the claimant's benefits" was a resource within the meaning of the Social Security Act and its associated regulations.  Under Title XVI of the Social Security Act, an individual who does not have a spouse living with him or her is eligible for supplemental security income only if his or her resources amount to less than $2,000.  See 42 U.S.C. §§ 1382(a)(1)(B) and 1382(a)(3)(B).  The term "resource" is defined in the Social Security regulations:

> (a) Resources; defined.  For purposes of this
> subpart L, resources means cash or other liquid assets[3]

_____

[3] The term "liquid resources" is defined in the regulations as follows:
> Liquid Resources.  Liquid resources are cash or other property which can be converted to cash within 20 days, excluding certain nonwork days as explained in § 416.120(d).  Examples of resources that are ordinarily liquid are stocks, bonds, mutual fund shares, promissory notes, mortgages, life insurance policies, financial institution accounts (including savings, checking, and time deposits, also known as certificates of deposit) and similar items.  Liquid resources, other than cash, are evaluated according to the individual's equity in those resources. . . .

8

> or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance.
>    (1) If the individual has the right, authority or power to liquidate the property or his or her share of the property, it is considered a resource. If a property right cannot be liquidated, the property will not be considered a resource of the individual (or spouse).

20 C.F.R. § 416.1201.


Among the liquid assets qualifying as resources for purposes of determining eligibility for SSI benefits are unspent (or conserved) current (i.e., non-retroactive) SSI benefit payments. See Beatty v. Schweiker, 678 F.2d 359, 361 (3d Cir. 1982) ("[u]nspent SSI payments clearly fall within [the] definition" of resources given in § 416.1201); Cruz v. Apfel, 48 F. Supp. 2d 375, 377 (S.D.N.Y. 1999) (explaining that as an exception to the general rule that unspent SSI benefits are resources, unspent retroactive benefit payments are excluded from resources for six months after receipt, and may be permanently sheltered from being counted as resources); Singer v. Sec'y, HHS, 566 F. Supp. 204 (S.D.N.Y. 1983) (ruling that when SSI recipient saved a portion of his benefits, those savings counted as excess resources when

_____

20 C.F.R. § 416.1201(b).

they exceeded the statutory cap on resources).  <u>See also</u> 20

C.F.R. § 416.1210 (listing Title XVI retroactive payments, but

not unspent non-retroactive payments,[4] as excluded from

resources).

To the extent the Citizens Bank account balance represented

Joyce's saved SSI benefits, the account was her property, and is

not sheltered from being counted as a "resource" for SSI

purposes.  In other words, Joyce's saved SSI benefits cannot form

the corpus of a trust that serves to shelter those assets from

being counted as resources.[5]  While the regulations provide that

_____

[4] In the balance of this order, unspent non-retroactive
payments will be referred to as conserved current benefits.

[5] Tellingly, in none of the four SSI cases involving trusts
or conservatorships cited by claimant was the trust corpus
derived from SSI benefits.  <u>See</u> <u>Lanoue</u>, 146 N.H. at 505 ($900,000
settlement of medical malpractice action placed in "special needs
trust" established under 42 U.S.C. § 1396p); <u>White v. Apfel</u>, 167
F.3d 369, 370 (7th Cir. 1999) ($35,000 settlement of personal
injury action "placed in a restricted trust pursuant to a court
order"); <u>Frerks v. Shalala</u>, 52 F.3d 412, 413 (2d Cir. 1995)
($333,000 settlement of medical malpractice action placed in bank
account subject to the control of the Surrogate Court); <u>Navarro
v. Sullivan</u>, 751 F. Supp. 349, 350 (S.D.N.Y. 1990) ($133,333
medical malpractice settlement restricted, by court order, to
uses other than support and maintenance).  Claimant has
identified no case, nor has the court found one, involving a
trust, or any other financial arrangement, that was funded by
conserved current SSI benefits and that was sheltered from
recognition as a resource.

unspent <u>retroactive</u> Title XVI benefits may be sheltered from being counted as resources, the regulations do not permit sheltering of conserved current benefits.

When paid to her, Joyce's SSI benefits must be spent on her support and maintenance, or, if "not needed for the beneficiary's current maintenance or reasonably forseeable needs," they must be conserved and invested. <u>See</u> 20 C.F.R. § 416.645(a). When unspent benefits are conserved and invested, they remain the property of the beneficiary, and the account in which they are placed must indicate the beneficiary's ownership of the account. <u>See</u> 20 C.F.R. § 416.645(b). The preferred forms of investment listed in § 416.645(b) all fall within the category of liquid resources defined in § 416.1201(b). Thus, both case precedent and the regulations themselves establish that notwithstanding how the Citizens Bank account established for Joyce's benefit may be titled, any unspent SSI benefits deposited in it remain Joyce's property, and are countable resources.

Far from being unavailable for Joyce's support and maintenance, the Citizens Bank account, opened by her

11

representative payee for the express purpose of receiving and managing her Social Security benefits checks, was and is routinely used by her representative payee to pay for her support and maintenance.[6]  (See Pl.'s Mot. for Order Reversing the Decision of the Comm'r at 5 (Singer "continued to use this account to pay [Joyce's] living expenses).)  To the extent it contained Joyce's SSI benefits, the account could not be used for anything other than her support and maintenance, and could not qualify as a trust, for Social Security purposes, because unspent current benefit payments cannot, as a matter of law, make up the corpus of a trust – at least not one that successfully avoids recognition of the accumulated funds as disqualifying assets when they exceed $2,000.

The claimant, the Commissioner, the ALJ, and the Appeals Council have all devoted considerable time and energy to properly

--------

[6] The Administrative Transcript does not include cancelled checks or other direct evidence of the expenditures made from the account, but it may be presumed that the account was used to pay for Joyce's support and maintenance.  For example, for the fiscal year ending October 31, 2000, Singer reported that all of Joyce's SSI benefits for that year were spent on her support and maintenance.  (Tr. at 47.)  If all of her benefit checks went into the Citizens Bank account, and all of her benefits were used for her support and maintenance, then, necessarily, the account was used for her support and maintenance.

characterizing the trust qualities of the Citizens Bank account. However, for reasons discussed above, it is not possible, on this record, to determine the nature of that account, for resource-counting purposes, because the record does not fully disclose the source of the funds in that account. If the account has been funded exclusively by Social Security benefits, then, as a matter of law, it cannot be a trust, no matter how it may be titled, and Joyce is ineligible for benefits whenever the account balance is greater than $2,000.

The matter is complicated, however, by Singer's seemingly uncontested assertion that he also deposited his own funds into that account for Joyce's benefit, despite SSA's rather clear warnings against commingling a beneficiary's funds with other money. (See, e.g., Tr. at 124.) To the extent Singer put his money into the account for his daughter's benefit – and the record is not well developed on this point – that money may or may not count as resources available to Joyce. Singer's funds may not qualify as resources, depending on whether those funds – commingled as they were with Social Security benefits – qualify

13

as having been placed in a bona fide trust.[7]  None of these questions have been addressed below.

Given the absence of a developed record, the decision of the Appeals Council cannot be affirmed.  The record does not contain substantial evidence supporting the finding that the Citizens Bank account contained more than $2,000 of unspent Social Security benefits at any particular time.[8]  The record contains deposit and withdrawal data for only three months.  At the same time, however, the Appeals Council's decision is not properly reversed, because reversal would have the effect of reinstating the ALJ's decision, which itself is based upon an erroneous legal

_____

[7] It does seem unlikely that Singer's contributions to the account will qualify as trust funds, given that his deposits were commingled with funds legally incapable of forming the corpus of a trust, and given that the account into which those deposits were made was routinely used for Joyce's support and maintenance, the very categories of expenditure for which a resource-sheltering trust cannot be used.

[8] Plainly, however, the account did contain conserved current benefits, converted to resources.  For example, between July 31, 2000, and September 29, 2000 – the only period for which there are informative bank records – the account grew from $2,469.17 to $3,284.69.  More importantly, during that period, the account was credited with $1,443.20 in directly deposited Social Security benefits (both SSI and disability insurance benefits) against which three checks were written, for a total of $584.05, leaving $859.15 in unspent benefits in the account. (Tr. at 48.)

premise, namely that a trust can be funded with Social Security benefits which then would escape recognition as available resources for purposes of disqualification for continuing benefits.  The matter must be remanded.

On remand, it will be necessary to determine the source of funds held in the account (Singer's contributions versus accumulated Social Security benefits) at any time for which ineligibility is claimed.

Of course, if it is determined that Joyce was ineligible in any given month due to available excess resources, and was overpaid, before determining her eligibility for the following month, it will be necessary to deduct the overpayment, to ascertain the balance the account should have had in it.  A good example of such a running accounting may be found in Gilbert v. Sullivan, No. 89 C 20378, 1990 WL 304307 (N.D. Ill. Dec. 28, 1990).  Given that the account usually held less than $3,000, and generally tended to hold steady rather than grow continually, it seems more than likely that a correct calculation of Joyce's available resources in any given month (even assuming Singer's

15

contributions are countable) will necessarily result in a determination of ineligibility and overpayment for some number of months substantially less than the full thirty months between May 1998 and October 2000. That is, the amount in controversy would appear to be far less than the parties seem to think, and given that circumstance, the cost of resolving this dispute has probably already far exceeded the amount at issue. It may well be time for rational judgment to strike a reasonable and responsible compromise, and end the unwarranted financial drain on the beneficiary and the taxpayers.

In any event, on the record before the court, the matter must be remanded for further proceedings before the ALJ.

## Conclusion

For the reasons given, the decision of the Appeals Council is reversed, and the matter is remanded to the ALJ for further proceedings consistent with this opinion. The Clerk of Court shall enter judgment in accordance with this order and close the case.

16

**SO ORDERED.**


                                    _____
                                    Steven J. McAuliffe
                                    United States District Judge

September 2, 2003

cc:   Raymond J. Kelly, Esq.
      David L. Broderick, Esq.